W. Foster SELLERS, Appellant,

v.

BUREAU OF PRISONS,
et al., Appellees.

No. 90–5197.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 21, 1991.

Decided March 27, 1992.

Julie M. Carpenter (appointed by the Court) with whom David W. DeBruin was on the brief, for amicus curiae urging that the judgment of the District Court be reversed. W. Foster Sellers, pro se, also entered an appearance for appellant.

William J. Dempster, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellees.

Before: MIKVA, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Appellant, W. Foster Sellers, filed an action under the Privacy Act against the Bureau of Prisons and the Parole Commission claiming that the agencies maintained incorrect information in his inmate files. Mr. Sellers sought amendment of his records and money damages, contending that the agencies violated sections (e)(5), (g)(1)(C), and (g)(4) of the Act by using the incorrect information in determinations adverse to him. Relying on this Court's decision in *Doe v. United States*, 821 F.2d 694, 701 (D.C.Cir.1987), the United States District Court for the District of Columbia granted appellees' motion for summary judgment, holding that the agencies satisfied the requirements of the Privacy Act simply by noting in Mr. Sellers's prison records that he disputed the information contained in the records. We reverse the district court and remand for further consideration of Mr. Sellers's claims. The agencies do not meet the Act's requirements by indicating that the appellant disputes the information in his prison files.

## I. BACKGROUND

In 1986, while an inmate in federal prison, Mr. Sellers asked to see two presentence reports held in his files at the Parole Commission and the Bureau of Prisons. Mr. Sellers alleged that the presentence reports contained inaccuracies; specifically, one of the reports, prepared in 1979, contained a reference to an alleged bank robbery in North Carolina. Appellant claimed that the bank robbery charge had subsequently been dismissed.

After he contacted the probation office that prepared the 1979 presentence report, Mr. Sellers was told that the office erroneously submitted the report and had asked the Parole Commission and the Bureau of Prisons to return it without considering it. But neither agency returned the report. Instead, the Parole Commission used the report when it denied Mr. Sellers's parole in October of 1986. Furthermore, Mr. Sellers claims that the Bureau of Prisons used the 1979 presentence report in making decisions adverse to him.

In 1987, Mr. Sellers filed a complaint in the United States District Court for the District of Columbia claiming, *inter alia*, that the Bureau of Prisons, the Parole

Commission, and two individual defendants violated the Privacy Act, 5 U.S.C. § 552a(e)(5) and (g)(1)(C), by failing to maintain accurate records, and § 552a(d) and (g)(1)(A) by failing to amend inaccurate files. His complaint alleged that the Parole Commission used the 1979 presentence report in its decision denying him parole in 1986. The complaint also claimed that the allegedly erroneous presentence report adversely affected determinations by the Bureau of Prisons regarding custody and security classifications, job and quarters assignments, and the opportunity to earn money and good time. In addition to the claims surrounding the 1979 presentence report, the complaint further alleged that other inaccuracies in Mr. Sellers's prison records resulted in decisions adverse to him. Mr. Sellers sought both amendment of his records and money damages.

The district court dismissed Mr. Sellers's complaint, holding that appellees' systems of records were exempt from the amendment provisions of the Privacy Act. *Sellers v. Bureau of Prisons*, No. 87–2048, slip op. at 1, 1988 WL 105007 (D.D.C. Sept. 29, 1988). The district court also dismissed the claims against the two individual defendants and transferred Mr. Sellers's *habeas* claims to the Illinois judicial district in which he was incarcerated at the time. *Id.*

This Court summarily affirmed the district court's order dismissing the two individual defendants and the Privacy Act claim under section 552a(d). *Sellers v. Bureau of Prisons*, No. 88–5369, slip op. at 1 (D.C.Cir. June 13, 1989). The Court remanded Mr. Sellers's Privacy Act claim under section 552a(e)(5), however, holding that regulations governing the Bureau of Prisons and the Parole Commission do not exempt those agencies' records from section (e)(5) of the Act. Accordingly, this Court remanded the section (e)(5) claims to the district court "to determine whether Sellers presented a cause of action by claiming that the Bureau of Prisons and the Parole Commission violated the Section 552a(e)(5) requirement to maintain accurate records." *Id.*

Seeing its task on remand as that of deciding the "very narrow question … whether the file defendants compiled on plaintiff when they determined his parole eligibility in October, 1986 was in compliance with the Privacy Act's requirement[s]," the district court granted summary judgment in favor of appellees. *Sellers v. Bureau of Prisons*, No. 87–2048, slip op. at 1, 3 (D.D.C. May 14, 1990). Citing this Court's decision in *Doe v. United States*, 821 F.2d 694, 701 (D.C.Cir.1987) (en banc), the court held that since it could not require appellees to amend their records, it was sufficient that the Parole Commission noted in Mr. Sellers's file that he disputed the information contained in his records. The district court did not, however, address Mr. Sellers's claim against the Bureau of Prisons for using the allegedly erroneous presentence report in its decisions. Nor did the court determine the viability of the claims surrounding the allegedly inaccurate information other than the 1979 presentence report.

Mr. Sellers again appeals the district court's decision. This Court denied the agencies' motion for summary affirmance. *See Sellers v. Bureau of Prisons*, No. 90–5197, slip. op. at 1, 1991 WL 56314 (D.C.Cir. Apr. 15, 1991).

## II. ANALYSIS

### A. *Mootness*

On June 29, 1989, the Parole Commission reviewed Mr. Sellers's file and his claim that the incorrect presentence report was improperly considered in his parole decision. Agreeing that the North Carolina bank robbery should not have been considered, the Commission modified Mr. Sellers's offense severity and guideline range. The Commission determined, however, that the changes in severity and guideline range did not warrant modification of its decision to deny parole. Appellees now argue that because the presence of the bank robbery in the presentence report did not ultimately affect the Commission's parole decision, this case is moot.

■ An intervening event renders a case moot if: (1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged violation will recur. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Here we cannot say that the Parole Commission's later decision that it would have denied Mr. Sellers's parole absent consideration of the 1979 presentence report "completely and irrevocably eradicated" the effects of both agencies' alleged violations.

We pause here to point out that there are actually four different claims at issue in this lawsuit. In addition to his claim against the Parole Commission for using the allegedly erroneous presentence report in denying him parole, Mr. Sellers also claims that the Bureau of Prisons used that report in making decisions adverse to him concerning custody and security classifications, job and quarters assignments, and the opportunity to earn money and good time. Furthermore, the appellant asserts that there were other pieces of incorrect information in his prison files that *both* the Bureau of Prisons and the Parole Commission used in making determinations adverse to him.

Appellees contend that this case is moot because the Parole Commission later decided that it would have denied Mr. Sellers's parole absent consideration of the North Carolina bank robbery. Apparently, appellees misconstrue the nature and extent of Mr. Sellers's complaint. As we explained above, Mr. Sellers's Privacy Act claims challenge more than just the Parole Commission's use of the North Carolina bank robbery in denying him parole; Mr. Sellers claims that the entire 1979 presentence report was improperly used in that decision. Furthermore, Mr. Sellers contends that both the Parole Commission and the Bureau of Prisons used the 1979 report, as well as other erroneous information maintained in his files, to make other determinations adverse to him.

Therefore, even assuming that the Parole Commission's later decision concerning the North Carolina bank robbery affected Mr. Sellers's claims against the Commission concerning its parole decision, it in no way affected his remaining claims against the Commission. Nor did it affect his claims against the Bureau of Prisons. Because these claims remain viable despite the Parole Commission's later decision, this case is not moot.

### B. *The Privacy Act Claims*

We now turn to appellant's argument that the district court erred in granting summary judgment in favor of the Parole Commission and the Bureau of Prisons. We review a grant of summary judgment *de novo*. *Nikoi v. Attorney General of the United States*, 939 F.2d 1065, 1068 (D.C.Cir.1991). In reviewing such a decision, we must ensure that the district court did not overlook or improperly resolve any disputed issues of fact, and that it correctly applied the relevant law to the undisputed facts. *Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C.Cir.1990).

At issue in this appeal are sections (e)(5), (g)(1)(C), and (g)(4) of the Privacy Act. Section (e)(5) provides that each agency that keeps a system of records must "maintain all records ... with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Section (g) of the Act provides civil remedies for violations of section (e)(5). In particular, section (g)(1)(C) permits a civil action if an agency "fails to maintain any record concerning any individual ... and consequently a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C). And section (g)(4) provides that in any action brought under section (g)(1)(C), "in which the court determines that the agency acted in a manner which was intentional or willful," the United States shall be liable for actual damages sustained by the individual not less than $1,000 as well as litigation costs and attorneys' fees. 5 U.S.C. § 552a(g)(4).

■ Mr. Sellers's complaint alleges that the Parole Commission and the Bureau of Prisons used the erroneous presentence re-

port, as well as other erroneous information contained in his files, to make determinations adverse to him in violation of sections (e)(5), (g)(1)(C), and (g)(4) of the Act. Appellant argues that, as a result, he is entitled to money damages and attorneys' fees. The district court, citing our decision in *Doe v. United States*, 821 F.2d 694, 701 (D.C.Cir.1987) (en banc), rejected Mr. Sellers's claims, holding that since it could not require appellees to amend their records, it was sufficient that the agencies noted in Mr. Sellers's files that he disputed the information contained in the presentence report. *Sellers v. Bureau of Prisons*, No. 87–2048, slip op. at 1, 3 (D.D.C. May 14, 1990). We think the district court misconstrued our holding in *Doe*.

*Doe* involved a claim by a public employee against the Department of State under the Privacy Act. The employee's records at the Department contained a report by a special agent that described an interview with her. Essentially, Doe claimed that the report attributed to her something that she never said. When Doe complained, the Department stated that it found no reason to question the accuracy of the agent's report but that it would include her version of the interview as part of the record "without affirming or denying her allegations." *Doe*, 821 F.2d at 697.

The employee brought an action against the Department of State seeking removal of the report from her employment records and money damages. *Id.* at 695. The district court granted summary judgment in favor of the State Department, holding that the Department satisfied its duties under the Act by supplementing the agent's report with the plaintiff's denials. *Id.* at 696. We upheld that decision.

We pointed out, however, that *Doe* was not the "typical" Privacy Act case. *Id.* at 699–700. In the typical case, we observed, "it is feasible, necessary, and proper, for the agency and, in turn, the district court to determine whether each filed item of information is accurate." *Id.* at 699. But because only the special agent and the employee were present when the interview in *Doe* took place, the State Department could

not determine whether the disputed information in the agent's report was, indeed, accurate. Consequently, we allowed the Department to satisfy its burden under the Privacy Act by including in the employee's file the employee's version of the conversation between her and the agent. *Id.* at 701.

Later in *Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859 (D.C.Cir.1989), we further explained the narrow reach of our decision in *Doe*. In *Strang*, an employee of the Arms Control & Disarmament Agency brought an action against the agency under the Privacy Act seeking amendment of the agency's records as well as money damages. The agency's records contained several memoranda indicating that the employee improperly disclosed top secret documents to foreign officials. *Id.* at 860. On the basis of those memoranda, the agency suspended the employee for six months and stripped her of her "code word" security clearance. *Id.*

We held that the district court improperly granted summary judgment to the ACDA with respect to two of the memoranda which claimed that the employee gave certain foreign officials a document not cleared for dissemination. *Id.* at 865. Declining to apply our previous decision in *Doe*, we held that, in the context of those two documents, *Strang* presented a "typical" Privacy Act case because the facts at issue were clearly provable. *Id.* at 866. We cautioned that *Doe* was a "narrow decision" that "surely does not stand for the proposition ... that the district court need not determine definitively the accuracy of the agency's records, as long as the agency somehow can be said to have acted fairly." *Id.* Accordingly, we remanded to the district court for a *de novo* review of the parties' evidence to determine the accuracy of the challenged memoranda. *Id.* at 868.

We think that this case is more appropriately resolved under *Strang* than under *Doe*. As in *Strang*, the truth here was relatively easily ascertainable. First, with respect to the 1979 presentence report, the agencies needed only to determine whether that report was improperly submitted to

them. To aid them in this determination, the Bureau of Prisons and the Parole Commission had three letters from the probation office in North Carolina that prepared the 1979 report: One to the appellant explaining that the report was erroneously submitted to the Parole Commission and one to both the Parole Commission and the Bureau of Prisons stating that the report was submitted in error and asking that the agencies return it. Furthermore, the agencies had the Parole Commission's later decision apparently conceding that the North Carolina bank robbery, which was part of the 1979 presentence report, was improperly considered as part of Mr. Sellers's parole decision.

■ Appellees argue that this case is more like the "atypical" case in *Doe* than it is like the typical case in *Strang*. Appellees contend that they cannot be expected to verify conclusively the accuracy of their inmate files, especially files used as evidence in a parole decision, anytime an inmate challenges the information contained in those files. We disagree. As long as the information contained in an agency's files is capable of being verified, then, under sections (e)(5) and (g)(1)(C) of the Act, the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual. If the agency wilfully or intentionally fails to maintain its records in that way and, as a result, it makes a determination adverse to an individual, then it will be liable to that person for money damages.

Our holding in *Doe* applied "[o]nly when the Department had narrowed the controversy to *what Doe said*—as distinguished from what in fact existed in the world outside the Doe/Huges interview...." *Doe*, 821 F.2d at 700. Here the factual dispute had not been narrowed in such a manner. Therefore, the agencies did not satisfy the requirements of sections (e)(5) and (g)(1)(C) simply by noting that Mr. Sellers disputes the information in his prison files.

Appellees also argue that the other allegedly erroneous information, that concerning Mr. Sellers's escape attempt and disciplinary infractions in prison, was obtained from Prison Disciplinary Committee Reports which stated that Mr. Sellers had been found guilty of the incidents after being given an opportunity to refute the charges. If this is true, then perhaps appellees met the requirements of the Act with respect to those pieces of information. But we do not know exactly which pieces of information, other than the 1979 report, Mr. Sellers is challenging. The district court below did not address his claims other than those concerning the 1979 presentence report. In so limiting its focus on remand, the court below misunderstood the scope of our first remand in this case. Accordingly, we now make it clear that Mr. Sellers is entitled, on remand, to a determination whether the agencies met the requirements of sections (e)(5) and (g)(1)(C) of the Act with regard to *all* of the information he claims is incorrect in his files.

### III. CONCLUSION

The Privacy Act requires that each agency keeping a system of records must maintain those records with "such accuracy, relevance, timeliness, and completeness as is reasonably necessary" to assure fairness to an individual. 5 U.S.C. § 552a(e)(5). If an agency willfully or intentionally fails to maintain records in such a manner and, as a result, makes a determination adverse to an individual, it will be liable to that person for money damages. 5 U.S.C. §§ 552a(g)(1)(C) and (g)(4). Because the challenged information in Mr. Sellers's files was capable of being verified, the agency did not satisfy the requirements of the Privacy Act simply by noting in his files that he disputed some of the information the files contained. Therefore, we remand for the district court to determine whether the Bureau of Prisons and the Parole Commission wilfully or intentionally failed to maintain Mr. Sellers's records in accordance with sections (e)(5) and (g)(1)(C) of the Act. *See White v. Office of Personnel Management*, 787 F.2d 660 (D.C.Cir.1986) (in action for damages under Privacy Act, court must determine whether standard ar-

ticulated under section (g)(1)(C) has been met).

*So Ordered.*