Joel D. WEBB, Plaintiff,

v.

John W. MAGAW, et al., Defendants.

No. 93–1218.

United States District Court,
District of Columbia.

Feb. 28, 1995.

Janice M. Bellucci, Rockville, MD, for plaintiff.

Martina Utgoff Braswell, Asst. U.S. Atty., for D.C., Washington, DC, for defendants.

### OPINION

FRIEDMAN, District Judge.

Joel D. Webb served as an agent of the United States Secret Service from December 14, 1970, to June 14, 1979. He alleges that between 1980 and 1993 he attempted to seek employment with other local and federal government agencies, but has been consistently denied employment because of allegedly false statements about his employment history made by the Secret Service. Mr. Webb filed suit pursuant to the Privacy Act, 5 U.S.C. § 552a, to correct alleged inaccuracies in his employment records at the Secret Service and for damages. The defendants are the United States Secret Service and its employees Melvin E. Laska, Jack E. Kippenberger and William B. Coggins. Plaintiff and defendants each filed a motion for summary judgment, and the Court heard argument on the motions on February 27, 1995. The Court finds that there are no issues in dispute that are material to disposition of this matter and that defendants are entitled to judgment as a matter of law.

### I. BACKGROUND

Mr. Webb alleges that for the first seven and one half years of his employment at the Secret Service his supervisors gave him satisfactory performance reviews and that he consistently received promotions. He did not receive a similar performance rating for the last year of his employment with the Service after he had transferred to the Service's Palm Beach and then Miami field offices. Just prior to his resignation, Mr. Webb received an unsatisfactory performance appraisal from Charles Howell, the supervisor in the Service's Miami Field Office. Deposition of Joel Webb at 17. After Mr. Webb resigned, he also received an unfavorable evaluation in a Reemployment Recommendation form filled out by Jack Kippenberger, who had supervised Mr. Webb for eleven months in the Palm Beach Field Office. Attachment 9 to Plaintiff's Motion For Summary Judgment ("Pl.Mot.") Mr. Kippenberger's negative evaluation is the heart of Mr. Webb's Privacy Act claims.

To the form's question "[h]ow would you rate employee," Mr. Kippenberger checked the box stating "[b]elow average," and commented that "[t]he employee was found to be unreliable, irresponsible, inconsistent, and lacks good judgment." Pl.Mot.Attach. 9. In response to the question "[w]ould you recommend employee be reemployed," Mr. Kippenberger checked the box next to the answer "no." *Id.* To explain his view, he wrote:

Over 8½ year period of employment with this Service, Mr. Webb was unable to comprehend the basics of investigations and report writing. He was incapable [of] performing *any* duties without constant guidance and supervision.

*Id.* The Reemployment Recommendation form completed by Mr. Kippenberger was placed in Mr. Webb's personnel file on August 28, 1979.

In 1980 and 1982, defendant William B. Coggins of the Secret Service answered the employment questionnaires of three different nonfederal entities that were considering hiring Mr. Webb but did not. In his answers, Mr. Coggins paraphrased and quoted from the Reemployment Recommendation form completed by Mr. Kippenberger. *See* Pl.Mot.Attach. 14, 16. In each of these instances, Mr. Webb had signed a form releasing the Secret Service from any liability arising from the release of the agency's information about Mr. Webb to the inquiring potential employer.

In 1991, the Secret Service allowed the Department of Housing and Urban Development, which was considering hiring Mr. Webb, to review Webb's personnel files. After reviewing the pertinent records and contacting Mr. Kippenberger, HUD decided not to hire Mr. Webb. The HUD report of its investigation noted that the personnel file reflected that Mr. Coggins had commented that Mr. Webb's cooperation and loyalty were average and that he was "unreliable, lacked initiative, and had a general rating below average." Pl.Mot.Attach. 20. The HUD report discussed Mr. Kippenberger's Reemployment Recommendation form, noting that he had stated that Mr. Webb was "unreliable, irresponsible, inconsistent, and lacked good judgment[,] that after eight and a half years with the USSS, Webb was unable to comprehend the basics of investigation and report writing[, and] that Webb was incapable of performing duties without guidance and supervision." *Id.* The report stated that Mr. Hilton Green of HUD had a telephone conversation with Mr. Kippenberger who said "he would not recommend Webb for a position in federal law enforcement." *Id.* Plaintiff maintains that he first learned about the negative statements in his Secret Service personnel records in 1991 only after HUD had rejected his application for employment and Mr. Webb had received the HUD report through a Freedom of Information Act request.

At oral argument, counsel for plaintiff confirmed that the only allegedly false statements in dispute are those that Mr. Kippenberger wrote on the Reemployment Recommendation form, Mr. Coggins' statements in answer to employment questionnaires that paraphrased or restated Mr. Kippenberger's answers on the Reemployment Recommendation form, and Mr. Kippenberger's oral statements to Mr. Green. Plaintiff argues that Mr. Kippenberger's statement falsely describes Mr. Webb's performance as unsatisfactory for his entire eight and one half year career with the Secret Service.

Plaintiff makes several Privacy Act claims: failure to permit plaintiff access to his complete personnel record in violation of 5 U.S.C. § 552a(d)(1); refusal to correct plaintiff's personnel record in violation of 5 U.S.C. § 552a(d)(2); refusal to permit plaintiff to file a statement of disagreement with the personnel record in violation of 5 U.S.C. § 552a(d)(3); failure to maintain in its records only the information about plaintiff that was relevant and necessary in violation of 5 U.S.C. § 552a(e)(1); and failure of the Secret Service to make reasonable efforts to assure that its records regarding plaintiff were accurate prior to dissemination of records to prospective employers in violation of 5 U.S.C. § 552a(e)(6). Plaintiff seeks a copy of all his personnel records, the opportunity to file a statement disputing the contents of his personnel file, and the amendment or purging of the allegedly false information. Plaintiff also seeks damages in the amount of $765,905.72 for the Secret Service's maintenance and dissemination of inaccurate information. In addition, plaintiff alleges intentional infliction of emotional distress and defamation against the individual defendants.

## II. DISCUSSION

### A. *Summary Judgment Standard.*

■ Under Rule 56, Fed.R.Civ.P., summary judgment shall be granted if the plead-

ings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513; *see also Washington Post Co. v. U.S. Dept. of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir.1989). But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### B. *Plaintiff's Allegations Do Not Give Rise To Privacy Act Violations.*

James P. O'Neill, the FOIA and Privacy Act officer of the Secret Service, has filed a declaration stating that the Secret Service has provided Mr. Webb with all relevant documents that it possesses, that it has advised Mr. Webb that other records might be located with the National Personnel Records Center, that it has included in Mr. Webb's files his counsel's letters to the Secret Service that dispute information in the Service's records, that the Secret Service has removed from its files all recommendations previously provided to nonfederal entities, and that it has amended Mr. Kippenberger's Reemployment Recommendation. Declaration of James P. O'Neill at ¶¶ 3, 4, 5, 6. At oral argument, it became clear that the agency

has purged the narrative portions of the Reemployment Recommendation form but that the form still shows that Mr. Kippenberger rated the employee as below average and indicates that Mr. Kippenberger would not recommend rehiring Mr. Webb.

Because plaintiff now has received all relevant records from the Secret Service, defendants are no longer in violation of 5 U.S.C. § 552a(d)(1). The Secret Service has placed two letters from plaintiff's counsel in Mr. Webb's personnel file in order to explain Mr. Webb's disagreement with the record. At oral argument, counsel for Mr. Webb stated that plaintiff would prefer to supplement his Secret Service personnel file with an appropriate statement disputing the record in lieu of counsel's letters. Counsel for the Secret Service represented in open court that a late-filed statement by plaintiff would be accepted and placed in Mr. Webb's personnel file. Thus, unless for some reason the Secret Service rejects Mr. Webb's statement despite this representation, defendants are no longer in violation of 5 U.S.C. § 552a(d)(3). Plaintiff has offered no evidence to show that the information about Mr. Webb was irrelevant or unnecessary to accomplish a purpose of the agency. Defendants have therefore not violated 5 U.S.C. § 552a(e)(1). Accordingly, these three Privacy Act claims are dismissed.

 Plaintiff maintains that by failing to purge the entire Reemployment Recommendation form from the file, the defendants continue to violate 5 U.S.C. § 552a(d)(2). Plaintiff also continues to assert that defendants violated section 552a(e)(6) of the Privacy Act by disseminating inaccurate and incomplete records, for which plaintiff seeks damages. To show violations of these sections, plaintiff must show that the agency maintained incomplete, irrelevant, untimely or inaccurate records pertaining to plaintiff. 5 U.S.C. §§ 552a(d)(2)(B)(i), 552a(e)(6). To show a violation of section 552a(e)(6), plaintiff must also show that prior to disseminating any record, the agency failed to verify that it was accurate, complete, timely and relevant for its purposes. 5 U.S.C. § 552a(e)(6); *see Sellers v. Bureau of Prisons,* 959 F.2d 307, 312 (D.C.Cir.1992).

Plaintiff claims that Mr. Kippenberger's Reemployment Recommendation is inaccurate, because it states that Mr. Webb "was unable to complete the basics of investigations and report writing" and was incapable of "performing *any* duties without constant guidance and supervision" during Mr. Webb's entire eight and one half year career with the Secret Service. He argues that Mr. Kippenberger could not make such an evaluation based on his supervision of Mr. Webb for only eleven months. In addition, plaintiff maintains that the agency failed to verify the facts behind Mr. Kippenberger's statements and that it was required to verify how plaintiff performed during his first seven and one half years of employment at the Secret Service by examining his past performance appraisals or by contacting Mr. Webb's previous supervisors.

■ Given the context in which Mr. Kippenberger provided his negative evaluation and the language he used in drafting it, the Court concludes that the Reemployment Recommendation admits to only one reasonable interpretation: It was Mr. Kippenberger's opinion, formed in the course of supervising and observing Mr. Webb for eleven months, that Mr. Webb was a below average employee and that he would not recommend that Mr. Webb be reemployed by the agency. His observation was that Mr. Webb was unable to comprehend the basics of investigations and report writing despite having had eight and one half years of experience with the Service. The form expressly states that Mr. Kippenberger supervised Mr. Webb only from July 16, 1978, to June 3, 1979, and the form's questions are asked in such a manner as to make clear they are eliciting the opinion of the supervisor answering the question. Mr. Kippenberger did not write that Mr. Webb's performance was unsatisfactory for his entire period of employment with the Secret Service.

Mr. Kippenberger offered his opinion that Mr. Webb was unreliable, irresponsible, inconsistent, and that he lacks good judgment, and that Mr. Webb was "incapable [of] performing *any* duties without constant guidance and supervision." In these comments, he did not mention the eight and one half

year period of Mr. Webb's employment. In addition, Mr. Kippenberger had a sufficient basis for these opinions on Mr. Webb's performance. At his deposition, Mr. Kippenberger related two incidents that he said were but two examples of Mr. Webb's performance that led to his negative appraisal. Mr. Webb had left a surveillance without informing a superior and had failed to follow up on questioning a witness with respect to an assassination threat. Deposition of Jack Kippenberger ("Kippenberger Dep.") at 77–84. Mr. Webb provided a different view of one of the incidents and stated that he did not remember the other incident. But Mr. Webb's explanations do not undermine the fact that Mr. Kippenberger could reasonably have formed his opinion that these incidents reflected unfavorably on Mr. Webb's performance.

Mr. Kippenberger's comment regarding Mr. Webb's investigation and report writing abilities did include the disputed language regarding Webb's eight and one half years of employment. Although perhaps inartfully written, this comment merely indicates Mr. Kippenberger's opinion that despite eight and one half years of experience, Mr. Webb did not comprehend the basics of investigations or report writing. Mr. Kippenberger testified at his deposition that he did not intend this statement to mean that Mr. Webb's performance was poor for all of Mr. Webb's eight and one half years of employment at the Service. Kippenberger Dep. at 86–87. Indeed, as indicated in the HUD report of its investigation of Mr. Webb, HUD's understanding of Mr. Kippenberger's statement comported with Kippenberger's intended meaning: that Mr. Webb did not possess the investigative and report writing abilities of an agent of eight and one half years experience. Pl.Mot.Attach. 20.

Counsel for plaintiff conceded in open court that if the Court were to read Mr. Kippenberger's statement in this manner, as limited to the eleven month period when Mr. Kippenberger supervised Mr. Webb, then Mr. Kippenberger's statements were not verifiably false and there would be no Privacy Act violation. The Court does read the statement this way and finds that Mr. Kip-

penberger's statements did not address Mr. Webb's performance for the full eight and one half years of his employment at the Secret Service. Furthermore, there is no evidence that Mr. Kippenberger ever told anyone that Mr. Webb had deficiencies for eight and one half years. Kippenberger Dep. at 86–87. The Court concludes that Mr. Kippenberger was permitted to express his negative personal opinion and subjective evaluation of plaintiff's performance based on his observation and supervision of plaintiff over an eleven month period. *See Hewitt v. Grabicki*, 794 F.2d 1373, 1378 (9th Cir.1986).

The Court also finds that the Reemployment Recommendation form contained justified statements of opinion, not fact. Consequently, they were not "capable of being verified" as false and cannot be considered inaccurate statements. *Sellers v. Bureau of Prisons*, 959 F.2d at 312; *see Doe v. United States*, 821 F.2d 694, 699 (D.C.Cir.1987). The allegedly false statements made by Mr. Coggins and those made orally by Mr. Kippenberger were repetitions or paraphrases of the statements in the Reemployment Recommendation form prepared by Mr. Kippenberger and therefore also are statements of opinion that are not verifiably false or inaccurate. The Court concludes that the Secret Service's records regarding Mr. Webb were not based on a demonstrably false premise, but rather were based on Mr. Kippenberger's subjective evaluation that was "based on a multitude of factors [for which] there are various ways of characterizing some of the underlying events...." *White v. Office of Personnel Management*, 787 F.2d 660, 662 (D.C.Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 276, 93 L.Ed.2d 252 (1986). As such the Secret Service may retain and rely upon the statements in Mr. Webb's personnel file. *Id.* Accordingly, the agency need not amend the records pursuant to 5 U.S.C. § 552a(d)(2) and the defendants are not liable under 5 U.S.C. § 552a(e)(6) for damages for the dissemination of the information to HUD or to the three nonfederal entities. Plaintiff's Privacy Act Claims therefore are dismissed.

■ Even if the Court had found that the Secret Service violated the Privacy Act, it would still conclude that plaintiff cannot show that he is entitled to damages. An agency is liable for damages under the Privacy Act only if the agency "acted in a manner which was intentional or willful." 5 U.S.C. § 552a(g)(4); *See Albright v. United States*, 732 F.2d 181 (D.C.Cir.1984). In this Circuit, to defeat summary judgment a Privacy Act plaintiff must provide evidence that would permit a reasonable jury to find that the Secret Service acted "without grounds for believing its actions lawful" or had "flagrantly disregarded" his rights under the Act. *Laningham v. U.S. Navy*, 813 F.2d at 1242. Even if one were to read Mr. Kippenberger's statements as suggesting that Mr. Webb's performance was unsatisfactory for the entire previous eight and one half year period, at worst Mr. Kippenberger's miscommunication would only amount to negligence in the writing of his answers to the form's questions and would not amount to willful, intentional or even reckless disregard of Mr. Webb's rights. The violation alleged here was not so "'patently egregious and unlawful'" that anyone undertaking the conduct "should have known it 'unlawful.'" *Id.*, at 1242–43 (citations omitted); *see Albright v. United States*, 732 F.2d 181, 189 (D.C.Cir.1984).

*C. Plaintiff's Claims For Intentional Infliction Of Emotional Distress And For Defamation Must Be Dismissed.*

■ As certified by the Attorney General's designee, the individual defendants were acting within the scope of their employment. 28 U.S.C. § 2679(d)(1). Consequently, to maintain his tort claims, plaintiff had to sue the United States under the Federal Tort Claims Act. 28 U.S.C. §§ 2679(b), (d)(1), (d)(4). Plaintiff failed to invoke the FTCA as a basis of jurisdiction and failed to exhaust his administrative remedies under the FTCA. 28 U.S.C. § 2675(a). At oral argument, plaintiff acceded to dismissal of Counts II and III of his complaint on this basis. Accordingly, Counts II and III are dismissed.

### III. CONCLUSION

For the forgoing reasons, defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment

is DENIED. An Order consistent with this Opinion is entered this same day.

SO ORDERED.