Dennis DETERS, Appellant,

v.

**UNITED STATES PAROLE COMMISSION,**
Appellee.

No. 94–5237.

United States Court of Appeals, District of Columbia Circuit.

Argued May 6, 1996.

Decided June 7, 1996.

Dennis Deters, was on brief, pro se.

H. Thomas Byron, III, Arlington, VA, appointed by the court, argued the cause as amicus curiae in support of the appellant. Roy T. Englert, Jr., Washington, DC, was on brief.

Kristan Peters–Hamlin, Assistant United States Attorney, Washington, DC, argued the cause, for appellee. Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on brief. Douglas A. Wickham, Assistant United States Attorney, entered an appearance.

Before WILLIAMS, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Dennis Deters, a federal inmate, brought a *pro se* Privacy Act lawsuit for money damages against the United States Parole Commission (Commission). The Commission maintains records on federal prisoners; the inmate contends he has been aggrieved by the Commission's alleged intentional or willful failure to maintain accurate records of the quantity of cocaine involved in his offenses. The district court granted the Commission's motion for summary judgment. For the following reasons we affirm.

**I**

Four times in 1980 and 1981 Dennis Deters and his confederates used a small airplane to smuggle drugs from Colombia, South America to the United States. Deters was indicted and tried on federal drug charges. In October 1985 a jury convicted him of, *inter alia*, conspiring to import and to distribute marijuana, methaqualone and co-

caine. After trial the probation officer who prepared the presentence investigation report (PSI) attributed 24 kilograms of cocaine to Deters—12 on the third plane trip and 12 on the fourth. Deters objected to the PSI tally, arguing that he smuggled only 12 kilograms of cocaine, all on the fourth trip. The sentencing court made no finding on the issue, expressly declining to take quantity into account in sentencing Deters to 20 years in prison.

According to the Commission's regulations, a federal prisoner ordinarily receives an initial parole hearing within 120 days after he is incarcerated. 28 C.F.R. § 2.12(a). In anticipation of Deters's initial hearing the Commission prepared a "preliminary assessment worksheet" for him. Deters received a copy of the worksheet in January 1986. It showed him with a parole guideline range of "100+ months." The range was based in part on the "Category Eight" severity rating of his offense behavior. The Category Eight rating in turn was based on the PSI's attribution of 24 kilograms of cocaine to his offenses.[1] Had the quantity been 12 kilograms, his offense behavior would have had a Category Seven rating, *supra* note 1, and consequently the worksheet would have reflected a parole guideline range of 52–80 months. After receiving the preliminary assessment Deters waived his initial parole hearing.

By May 1992 Deters had served one-third (80 months) of his 20–year sentence and thus was statutorily eligible for parole. *See* 18 U.S.C. § 4205(a). In June 1992 he requested an initial parole hearing which was scheduled for September 1992. In August 1992 he wrote the Commission to challenge the accuracy of the PSI. Deters explained that although one coconspirator had testified that Deters smuggled 12 kilograms of cocaine on the third plane trip and 12 more on the fourth, another coconspirator, allegedly more reliable than the first, had suggested in his trial testimony, and had since declared in an

---

1. *See* 28 C.F.R. § 2.20, Guidelines for Decisionmaking, Offense Behavior Severity Index, Chap. Nine, Subchap. C (Category Eight for distribution of, or possession with intent to distribute, 18.75 or more kilograms of cocaine; Category Seven for distribution of, or possession with intent to distribute, between 6.25 and 18.74 kilograms of cocaine).

affidavit, that Deters smuggled no cocaine on the third trip. The Commission promptly informed Deters by letter that his challenge to the PSI would be placed in his file and considered at his scheduled parole hearing. Deters, however, waived the parole hearing after receiving a preliminary assessment worksheet that matched the one he had received in January 1986.

This sequence was repeated several times throughout the next year: Deters applied for parole and filed a challenge to the accuracy of the PSI; the Commission explained to him that it would address his challenge and examine the accuracy of his records at his parole hearing; Deters then waived his scheduled parole hearing and therefore waived parole consideration. He apparently refuses to attend an initial hearing until the Commission amends his file to manifest that his offenses involved only 12 kilograms of cocaine.

In October 1993 Deters filed suit pursuant to subsections (e)(5), (g)(1)(C), (g)(1)(D) and (g)(4) of the Privacy Act, 5 U.S.C. § 552a, claiming that the Commission's alleged intentional or willful failure to maintain accurate records has caused him $365,000 in damages. The district court granted the Commission's motion for summary judgment. Our review is de novo.

## II

The Commission maintains a system of records on federal inmates and therefore is subject to the Privacy Act. Subsection (e)(5) of the Act requires an agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy ... as is reasonably necessary to assure fairness to the individual in the determination." Subsection (g)(1)(C) provides a civil remedy if an agency fails to satisfy the standard in subsection (e)(5) "and consequently a determination is made which is adverse to the individual." Pursuant to subsection (g)(4), a plaintiff bringing an action under subsection (g)(1)(C) may recover actual damages if "the court determines that the agency acted in a manner which was intentional or willful."

In order to prevail on his claim for money damages pursuant to subsections (g)(1)(C) and (g)(4), Deters must prove the following: (1) he has been aggrieved by an adverse determination; (2) the Commission failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the Commission's reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the Commission acted intentionally or willfully in failing to maintain accurate records. *See Dickson v. Office of Personnel Management,* 828 F.2d 32, 37 (D.C.Cir.1987); *Rose v. United States,* 905 F.2d 1257, 1259 (9th Cir.1990). We affirm the district court's grant of summary judgment, concluding as a matter of law that the Commission neither *intentionally* nor *willfully* failed to maintain Deters's records with accuracy sufficient to assure fairness to him in a parole determination. We first address two issues that bear to some extent on the "intentional or willful" issue: whether the agency failed to maintain his records with sufficient accuracy and whether the agency made an adverse determination.

■ We begin with the accuracy of Deters's records. As early as August 1992 Deters explained to the Commission that the probation officer who prepared the PSI derived the 24-kilogram figure from the trial testimony of coconspirator and government witness Anthony Benanti: Benanti testified that Deters smuggled 12 kilograms of cocaine on the third plane trip and another 12 kilograms on the fourth trip. Deters pointed out, however, that another coconspirator and government witness, Walter Schieche, testified about cocaine only in connection with the fourth trip. Deters highlighted the trial transcript pages that contained Benanti's and Schieche's testimony discussing cocaine and the third plane trip. He also included Schieche's post-trial affidavit which declared that no cocaine had been smuggled on the third trip. In addition, Deters submitted materials designed to discredit Benanti and establish Schieche as the more reliable witness.

On receiving his comprehensive rebuttal to the PSI, the Commission placed it in his file

for consideration at his parole hearing. Joint Appendix (JA) 259. Thus his file not only revealed that he disputed the accuracy of the PSI but also included the evidence underlying the probation officer's 24–kilogram finding as well as other evidence that was not before the probation officer (*e.g.,* Schieche's affidavit). *See Fendler v. United States Bureau of Prisons,* 846 F.2d 550, 552–54 (9th Cir.1988) (by including prisoner's rebuttal to allegedly inaccurate PSI along with records sent to Commission, Bureau of Prisons assured fairness in parole determination and thereby satisfied subsection (e)(5)). Deters nevertheless contends that his file was not sufficiently accurate to assure fairness to him in the Commission's parole determination. According to Deters, the Commission, on receiving his challenge, should have made a credibility determination (Schieche versus Benanti), sided with Schieche, declared the PSI inaccurate and amended the records accordingly. *See* JA 90.[2]

Deters's argument is somewhat difficult to square with *Doe v. United States,* 821 F.2d 694 (D.C.Cir.1987) (en banc). Doe challenged the accuracy of an investigatory report. The report, which described a special agent's interview with Doe, attributed to Doe an incriminating statement she subsequently denied making. *Id.* at 696. We held that

the agency had assured fairness to Doe—the accuracy standard embodied in subsections (e)(5) and (g)(1)(C)—by including in her file her version of what she said at the interview and by not stating whose account (Doe's or the agent's) the agency believed. *Id.* at 699–701. We explained that "[i]n the typical Privacy Act case ... it is feasible, necessary, and proper, for the agency and, in turn, the district court to determine whether each filed item of information is accurate." *Id.* at 699. This is because in the typical case the "truth" is "clearly provable" or "relatively easily ascertainable." *Sellers,* 959 F.2d at 311. On the other hand, in the "atypical" case, where the challenged information is not capable of being verified, neither the agency nor the court on de novo review is required to "find and record 'truth.'" Instead, it suffices to "adjust [the] file equitably to reveal actual uncertainty." *Doe,* 821 F.2d at 701. *Doe* was an atypical case because the dispute had been narrowed to what Doe said at the interview, a fact "unknowable" to anyone but Doe and the agent. *Id.* at 700. *See generally Sellers,* 959 F.2d at 311.

Deters likewise presents an atypical case because the "truth"—whether he transported cocaine on the third trip—is not readily ascertainable. *Cf. id.*[3] A file that points out that the probation officer relied on Benanti's

2. The Commission promulgated a rule to exempt its system of inmate records from the amendment provisions of the Privacy Act, 28 C.F.R. § 16.85 (exempting system from 5 U.S.C. § 552a(d)); *see Sellers v. Bureau of Prisons,* 959 F.2d 307, 309 (D.C.Cir.1992), and a rule providing that a PSI is not subject to correction or amendment, 28 C.F.R. § 16.51(c). The Commission, however, has not exempted the system from subsection (e)(5). If an agency has no subsection (d) duty to amend, upon request, an allegedly inaccurate record, it is not clear what residual duty subsection (e)(5) imposes when an individual challenges the accuracy of a record. Does the agency nevertheless have to amend or expunge the record on the individual's request? Or does the agency merely have to address the accuracy of the record at some point before using it to make a determination of consequence to the individual? *Sellers* is not entirely clear on this point; the language of subsection (e)(5), however, suggests the latter course. *See OMB Privacy Act Guidelines,* 40 Fed.Reg. 28,948, 28,964 (1975) (subsection (e)(5) "places the emphasis on assuring the quality of the record in terms of the use of the record in making decisions affecting the

rights, benefits, entitlements, or opportunities ... of the individual"); *cf. Buxton v. United States Parole Comm'n,* 844 F.Supp. 642, 644 (D.Or. 1994) (Commission satisfied subsection (e)(5) by complying with statutory parole hearing procedures).

3. *Sellers* involved an inmate's challenge to the accuracy of a PSI. The PSI referred to a bank robbery charge that he claimed had been dismissed. He presented evidence showing that the probation office had erroneously submitted the PSI to the Commission and had asked the Commission to return it and not consider it. 959 F.2d at 308. The Commission failed to return it and used it in denying him parole. *Id.* We concluded that the case was a "typical" Privacy Act case because whether the PSI had been improperly submitted to the Commission "was relatively easily ascertainable" and "capable of being verified." *Id.* at 311–12. Consequently the Commission, having apparently made no effort to address his challenge before relying on the PSI to deny him parole, did not satisfy the Privacy Act merely by noting in his file that he disputed the accuracy of the PSI. *Id.* at 312.

testimony but also contains both Benanti's and Schieche's versions, as well as information bearing on their respective credibilities, "may be more accurate than a record embracing only one side's story." *Doe*, 821 F.2d at 700. The Commission, however, has not argued that this is an atypical case. We assume without so concluding that the Commission failed to maintain Deters's records with sufficient accuracy and turn to whether he has been aggrieved by an adverse determination.

Had Deters's parole hearing been held, the hearing panel would have established his parole guideline range and a parole date. An unfavorable decision would have constituted an adverse determination. Deters, however, waived all scheduled parole hearings and thereby waived parole consideration. Nevertheless, he claims he was aggrieved by an adverse determination each time the Commission prepared the preliminary assessment worksheet shortly before the scheduled parole hearing. According to Deters, each preliminary assessment amounted to an adverse determination regarding the severity of his offense behavior and thus his parole guideline range and release date. It is far from clear, however, that the preliminary assessment constitutes an adverse determination. The worksheet explains:

> On the basis of available documents concerning your case, the Commission has prepared a *preliminary* guideline assessment for your review prior to your in-person hearing. The *final* guideline determination in your case will be made after your in-person hearing. At the time of your hearing, you may present to the examiner panel documentary information concerning the evaluation of your case,

which you believe may affect your guidelines.

JA 53 (emphasis added). The preliminary assessment, then, serves to provide the inmate with notice, enabling him to review the record for error and prepare for his hearing. It does not appear to be in any way binding on the hearing panel, which makes *the* parole determination. If it is not binding on the hearing panel, can it really be deemed an "adverse determination," *i.e.*, one affecting the inmate's rights, benefits, entitlements or opportunities?

▮ Deters contends, alternatively, that each preliminary assessment included an adverse determination that he should not be granted "parole on the record," *i.e.*, parole without having to attend a hearing.[4] By not granting him parole on the record, he suggests, the Commission deprived him of a benefit or opportunity he "could reasonably have been expected to have been given if the record had not been deficient." *OMB Privacy Act Guidelines*, 40 Fed.Reg. at 28,969. But this argument is not without its difficulties. The *discretionary* "parole on the record" procedure exists not for the benefit of the inmate but rather "is intended to reduce the Commission's workload by eliminating the need for in-person hearings where parole eligibility is clearly warranted and no purpose will be served by a hearing." 46 Fed. Reg. 16,366 (1981). The Commission's decision not to grant parole on the record is not a decision to deny parole. Instead it is a determination that the prisoner must follow the standard course and appear at a hearing, hardly an adverse determination by itself. In sum, it is not clear that in preparing Deters's successive preliminary assessments the Commission made any adverse determination. We nonetheless assume the issue in

**4.** 18 U.S.C. § 4208(a) provides that "the Commission shall conduct a parole determination proceeding unless it determines on the basis of the prisoner's record that the prisoner will be released on parole." Section 2.12–03 of the Commission's Rules and Procedures Manual states that "a hearing panel may recommend that parole based upon the record be granted" if "it appears upon pre-hearing review (1) that parole upon completion of the minimum sentence (at parole eligibility date) or within 180 days of the pre-hearing review decision is clearly warranted, (2) that such release date occurs within

or above the applicable guideline range, and (3) that an in-person hearing does not appear necessary for further examination of the case." As noted, if Deters's PSI had attributed 12, not 24, kilograms of cocaine to him, the preliminary assessment worksheet would have manifested a guideline range of 52–80 months (rather than 100+ months); because Deters was statutorily eligible for parole after serving 80 months (May 1992), it appears that after May 1992 the hearing panel had the discretion to recommend parole on the record.

Deters's favor and examine his contention that the Commission acted in an intentional or willful manner.

In order to establish that the Commission willfully or intentionally failed to maintain his file with sufficient accuracy to assure fairness in its parole determination, Deters must prove that the agency "acted with something greater than gross negligence." *Tijerina v. Walters,* 821 F.2d 789, 799 (D.C.Cir.1987). An agency acts in an intentional or willful manner "either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." *Albright v. United States,* 732 F.2d 181, 189 (D.C.Cir.1984). "[T]he violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987) (internal quotation marks omitted).

■ Deters's argument is that the Commission acted in an intentional or willful manner because it "explicitly refused to consider or act on four (4) highly detailed administrative challenges to the accuracy of the disputed portion of [his] file," which he had submitted between August 1992 and July 1993. Brief of Appellant at 38. We disagree. To the extent Deters contends the Commission had a duty to act promptly on his challenges, he overlooks the fact that the Commission is exempt from subsection (d)'s requirement that, on receiving a request to amend an allegedly inaccurate record, the agency must promptly correct the record or furnish a reason for not doing so. *See supra* note 2. Any duty the Commission had regarding the accuracy of his file flows from subsection (e)(5). That provision suggests the Commission has no duty to act on an inmate's challenge and verify his record until the agency uses the record in making a determination affecting his rights, benefits, entitlements or opportunities. *See supra* note 2. In this connection the Commission, consistent with the parole statutes and regulations, held the view that it would make no such determination about Deters until his parole hearing. The Commission thus explained to him that, in accordance with its standard practice, the

hearing panel would consider his challenge and examine the accuracy of his records at that time. No fact-finder could determine on this record that the Commission "flagrantly disregarded" Deters's Privacy Act rights when it supplemented his file with his rebuttal to the PSI and offered him a hearing that would have addressed the accuracy of the PSI. Even if the Commission inadvertently or negligently violated Deters's Privacy Act rights by not examining the accuracy of the PSI before preparing a preliminary assessment (assuming *arguendo,* as we have *supra,* that a preliminary assessment constitutes an adverse determination), such a violation (if any) could in no sense be deemed "patently egregious and unlawful." Accordingly we conclude that, as a matter of law, Deters cannot prevail on his damages claim under subsections (g)(1)(C) and (g)(4).

## III

■ Deters's complaint also alleges a cause of action for money damages under subsection (g)(1)(D) which provides a civil remedy when an agency's failure to comply "with any other provision" of the Act has an "adverse effect" on an individual. The "other" provision allegedly violated here is subsection (e)(5), which we earlier discussed in the context of subsection (g)(1)(C). For two reasons we conclude that a plaintiff seeking damages for noncompliance with the standard set out in subsection (e)(5) must sue under subsection (g)(1)(C) and not subsection (g)(1)(D). First, subsection (g)(1)(D) is a catch-all provision which covers noncompliance with "any other provision" of the Act; because subsection (g)(1)(C) covers noncompliance with subsection (e)(5), *OMB Privacy Act Guidelines,* 40 Fed.Reg. at 28,969; *Doe v. FBI,* 936 F.2d 1346, 1360 (D.C.Cir.1991); *Sellers,* 959 F.2d at 310, the latter cannot be an "other provision." Second, unlike subsection (g)(1)(C), which requires the plaintiff to show that the agency's violation of the Act caused an *adverse determination,* subsection (g)(1)(D) merely requires the plaintiff to show that the agency's violation had an *adverse effect* on him. It would make little sense to hold an agency liable for noncompliance with subsection (e)(5)—that is, for fail-

ing to assure fairness in a determination—if the agency either makes no determination at all or makes an adverse determination without using the disputed record.[5]

For the foregoing reasons the judgment of the district court is

*Affirmed.*

---

**5.** In addition to providing a civil remedy for a violation of subsection (e)(5), we have held that subsection (g)(1)(C) "also creates a civil remedy when the agency maintains a challenged record that is the basis for an adverse determination made by another party." *Dickson,* 828 F.2d at 36 (OPM may be liable under subsection (g)(1)(C) for failure to maintain record with sufficient ac-

curacy to assure fairness in employment determination made by other agency that receives record from OPM). Although we suggested in *Dickson* that subsection (g)(1)(D) could cover a violation of subsection (e)(5), *id.* at 39, the holding in that case is limited to the scope of subsection (g)(1)(C).