**AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY, Plaintiff,**

v.

**DEPARTMENT OF JUSTICE, et al., Defendants.**

**Civ. A. No. 81–0815.**

United States District Court, District of Columbia.

Oct. 7, 1982.

Frank Askin, Constitutional Litigation Center, Rutgers Law School, Newark, N. J., for plaintiff.

Valerie K. Schurman, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This is an action brought under the Freedom of Information Act, 5 U.S.C., Section 552, to obtain access to records relating to the issuance of an immigrant visa to one Tscherim Soobzokov, together with any rec-

ords of Soobzokov's employment by defendants who are the Departments of Justice and State and the Central Intelligence Agency.[1] Plaintiff American Civil Liberties Union of New Jersey is a non-profit corporation "concerned, *inter alia,* with protecting the public's right to know how government conducts the public's business." Soobzokov is alleged to be a native of the U. S. S. R. who became a Jordanian citizen in 1947 and was admitted to the U. S. in 1955. According to plaintiff, Soobzokov acknowledged having served in the Waffen SS of the German Army, membership in which constitutes a crime under rulings of the Nuremburg Military Tribunal to which the U. S. is bound by treaty. Criminals are ineligible for immigrant visas. Plaintiff contends the public is entitled to know if there was complicity on the part of any government agencies in the illegal admission of a criminal to the U. S.; specifically, a *quid pro quo* of immigration for intelligence.

The Department of Justice ultimately released seven of eight documents it possessed which were responsive to the request and invoked Exemption No. 6 with respect to the eighth: a medical certificate for Soobzokov dated in June of 1955. The Department of State released 13 of its own documents and referred plaintiff to Justice for release of three documents which had originated there but were in its possession. The CIA found two responsive documents belonging to State and a "number" of responsive FBI documents, and referred plaintiff back to those agencies for a direct reply. State claimed Exemption No. 3, 5 U.S.C., Section 552(b)(3), for its two documents—a 1953 request from the U. S. Embassy in Amman, Jordan, for a security

advisory opinion and an undated "personal data form" containing information about Soobzokov's "then-current and past activities"—as records "pertaining to the issuance or refusal of visas" expressly made confidential by 8 U.S.C., Section 1202(f).[2]

The FBI invoked the national defense or foreign policy exemption (No. 1), 5 U.S.C., Section 552(b)(1), for "several" of the documents referred to it by the CIA which were found to contain "brief mentions" (sic) of Soobzokov's immigration as containing "information concerning intelligence activities, sources, and methods." In support of its claimed exemption the FBI submitted an unclassified affidavit of one Richard A. McCauley, a special agent designated as an original classification authority by the Attorney General, and moved to dismiss or for summary judgment.

Plaintiff then filed its own motion to compel the filing of a *Vaughn* index [3] which the government opposed, essentially on the ground that a *Vaughn* index would itself compromise the information entitled to the exemption. In support of its opposition to a *Vaughn* index the government submitted a second—classified—affidavit of Special Agent McCauley for the Court's *in camera* inspection. Plaintiff moved for leave to participate in the *in camera* review which, as might be expected, the government opposed. All motions were heard by the Court on October 4, 1982, prior to consideration of the government's *in camera* submission.

■ The FOIA's policy of maximum disclosure consistent with legitimate governmental interests has been made manifestly clear by the history of the Act both before and after its passage. *See EPA v. Mink,* 410 U.S. 73 at 79–80, 93 S.Ct. 827, 832, 35

---

**1.** Plaintiff's initial FOIA requests of August, 1979 (attached to defendants' answer to the complaint) were considerably more comprehensive but were limited in March, 1980, to the records now in issue.

**2.** Plaintiff does not presently take issue with either the Department of Justice exemption claims for the medical certificate nor with the referrals by CIA and State to other agencies. It initially thought itself to be already in posses-

sion of the 1953 embassy request for a security advisory opinion and did not dispute the exemption claimed for it until it learned that there may be a second such request which it does not have. Its principal controversy, however, is with the FBI.

**3.** *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973) *cert. denied* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

L.Ed.2d 119 (1973); *Ray v. Turner,* 587 F.2d 1187, 1190–91 (D.C.Cir.1978); *Vaughn v. Rosen,* 484 F.2d at 823. The FOIA admits of no graduated judicial response. Nothing is to be withheld from an FOIA requester unless it is exempt. Absent truly "exceptional circumstances," *Halperin v. Department of State,* 565 F.2d 699, 706–07 (D.C. Cir.1977), this Court is without discretion to balance the need for disclosure against a fairly debatable exemption claim or to devise some form of relief short of outright release (e.g., a précis) of non-exempt information.[4] Its function is to utilize its fact-finding powers to determine whether the information under consideration fits within one or more congressionally predetermined categories of secrets an agency may be permitted to keep, and if it does not, it must be divulged. *Soucie v. David,* 448 F.2d 1067, 1076–77 (D.C.Cir.1971).

■ The burden of proof is on the agency to sustain its claim to the exemption, 5 U.S.C., Section 552(a)(4)(B), but in national security cases the Court is to accord "substantial weight" to the agency's statements in affidavits attesting to the fact that FOIA disclosures could reveal intelligence sources and methods, and if they demonstrate a reasonable expectation thereof, are plausible and reasonably specific, uncontradicted, and give no cause to question the agency's good faith, the exemption should be sustained whether or not the Court itself agrees with the agency's opinions. *Halperin v. CIA,* 629 F.2d 144, 147–48 (D.C.Cir. 1980).

McCauley's public affidavit, while somewhat conclusory in the particulars of classification, establishes *prima facie* that the materials sought are within the ambit of Executive Order 12065 criteria for secrecy in the interest of national defense or foreign policy,[5] were originally formally and properly classified, and although somewhat antiquated, remain so classified today. It also explains in some detail how seemingly innocuous information in the abstract can, when in the possession of skilled intelligence analysts able to place it in context, reveal far more than the intrinsic worth of its substantive contents. McCauley's explanation of the intelligence process has certain characteristics of boilerplate, but it is no less valid (and its good faith no more suspect) because it must be reiterated in each FOIA case in which Exemption No. 1 is claimed. McCauley's public affidavit concludes, however, with the wholly conclusory assertion that "... portions of the documents responsive to plaintiff's request are classified in their totality and that any attempt to itemize, index, and describe these documents ..." (as, of course, a good faith *Vaughn* affidavit would necessarily do) "... would in itself reveal classifiable information and cause identifiable damage to the national security...." Consequently McCauley makes no attempt to itemize, index, or describe.

■ Although in the nature of a "last resort" because it is burdensome and conducted without benefit of confrontation, *Weissman v. CIA,* 565 F.2d 692, 697 (D.C. Cir.1977) and "should be employed only where absolutely necessary," *Allen v. CIA,* 636 F.2d 1287, 1298 n. 63 (D.C.Cir.1980), the Court does possess and should exercise discretion in national security situations to decide whether to examine, *in camera,* the government's classified affidavits and the disputed documents. The consideration by which the Court is to be guided is whether it has the ability to make a "responsible *de novo* determination on the claims of exemption" without it. *Ray v. Turner,* 587 F.2d at 1194–95; *Phillippi v. CIA,* 546 F.2d 1009, 1013 (D.C.Cir.1976); *Lesar v. U. S. Depart-*

---

4. Plaintiff contends that classifying agencies themselves are required by Executive Order 12065 to balance an otherwise valid national security exemption against a public interest in disclosure, and that the FBI has abused its discretion by failing to do so here. The argument is cast in considerable doubt by *Salisbury*

*v. United States,* 690 F.2d 966, 972–973 (D.C. Cir. 1982).

5. The government states that Executive Order 12356 superseded No. 12065 on August 1, 1982, and omitted the language in its predecessor which implied an agency obligation to balance. *See Salisbury v. United States, supra,* n. 4.

*ment of Justice,* 636 F.2d 472, 481 (D.C.Cir. 1980). The Court finds the validity of the FBI's exemption claim here to be too ephemeral on the public McCauley affidavit alone, and, therefore, exercises its discretion to conduct the *in camera* review of the classified McCauley affidavit and, if necessary, the documents themselves. See *Hayden v. National Security Agency/Central Security Service,* 608 F.2d 1381, 1385 (D.C. Cir.1979), *cert. denied* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

█ McCauley's classified affidavit (which is, of course, uncontradicted) is dated October, 1981, identifies the documents involved, and is accompanied by the disputed documents themselves which have been contemporaneously reclassified notwithstanding their age. The Court finds that those portions of the documents withheld which are responsive to plaintiff's request are so inextricably intertwined with the remaining portions, and with McCauley's classified affidavit (which is essential to an appreciation of the significance of both parts) as to make it doubtful whether an expurgated version of either or, for that matter, of the affidavit, would be of informational value to anyone.[6] *See Neufeld v. IRS,* 646 F.2d 661, 666 (D.C.Cir.1981); *Mead Data Central, Inc. v. U. S. Dept. of Air Force,* 566 F.2d 242, 260–61 (D.C.Cir.1977). Nor does the Court perceive any way in which adversary proceedings in connection with plaintiff's participation in the *in camera* review could assist in doing so, even if adequate security precautions could be arranged.

For the foregoing reasons, therefore, it is, this 7th day of October, 1982,

ORDERED, that plaintiff's motions to compel the filing of a public *Vaughn* index and to participate in the *in camera* review of the FBI's classified affidavit and the documents which are the subject of the FOIA exemption claimed herein are denied; and it is

FURTHER ORDERED, that defendants' motion for summary judgment is granted; and it is

FURTHER ORDERED, that the McCauley classified affidavit and the documents accompanying the same shall remain in the custody of the Court for a period of sixty (60) days, or until such time as they are requested by the U. S. Court of Appeals for its own *in camera* review in connection with an appeal herefrom.

---

6. The Court finds, for the record, however, that they are also unlikely to contribute materially to the public's knowledge in plaintiff's avowed area of interest.