**Louis J. BLAZY, Plaintiff,**

v.

**George J. TENET, Director, Central Intelligence Agency, et al., Defendants.**

**No. Civ.A. 93–2424 (PLF).**

United States District Court, District of Columbia.

Sept. 17, 1997.

14

Louis J. Blazy, Fairfax Station, VA, pro se.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for Defendants.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

Plaintiff brought this action pursuant to the Privacy Act, 5 U.S.C. § 552a, in conjunction with the Freedom of information Act, 5 U.S.C. § 552, seeking access to and amendment of documents in his personnel file at the Central Intelligence Agency where he was formerly employed. He also sought de-

claratory and injunctive relief under the First, Fourth and Fifth Amendments.[1]

The case is before the Court on defendants' motion to dismiss in part and for summary judgment, plaintiff's motion for clarification and reconsideration of the Court's May 7, 1996 Order, plaintiff's motion to strike from the record and/or seal certain documents filed by defendants, defendants' motion to file a reply in excess of the page limitations, plaintiff's motion for further discovery and plaintiff's motion to hold Gordon Zacrep in contempt.

## I. BACKGROUND

In early 1989, plaintiff, who was employed as a computer scientist with the CIA, applied for a job with the FBI. The FBI asked the CIA for background information on plaintiff, much of which had been accumulated during a recent security investigation. Plaintiff also inspected a "sanitized" version of his own security files and, on June 23, 1989, submitted a request pursuant to the Privacy Act seeking copies of "all [CIA] documents collected and maintained in various files listed under my name." *See* Complaint ¶¶ 9–10 and Ex. 2 to Plaintiff's Reply and Opposition to Defendants' Motion to Dismiss in Part and for Summary Judgment ("Pl.'s Reply and Opp."). On July 28, 1989, plaintiff wrote to the CIA inspector General listing several grievances, among them being the inaccuracy of statements made by his supervisor during his security investigation regarding allegations of sexual harassment. *See* Memorandum from Louis Blazy to Inspector General (July 28, 1989), Pl.'s Ex. 3 to Pl.'s Reply and Oppo. The IG investigated the allegations of sexual harassment and determined that they were unfounded. On July 16, 1990, the CIA Director of Security wrote to plaintiff, acknowledging that the allegations were unfounded and representing that the letter would be sent to the FBI in order to maintain the accuracy of plaintiff's FBI file. *See*

Letter from James Lynch to Louis Blazy (July 16, 1990), Pl.'s Ex. 5 to Pl.'s Reply and Opp.

One month later, plaintiff wrote to the FOIA and Privacy Act Branch of the CIA requesting "a copy of all documents collected and maintained in various files listed under my name." *See* Letter from Louis Blazy (Aug. 13, 1990), Ex. A to Defs.' Status Report (Mar. 20, 1996). Nearly four years later, defendants issued seven incremental responses dating from March 11, 1994 through October 7, 1994, providing plaintiff with a number of documents. Plaintiff then filed this action, alleging that he had not received all the documents to which he was entitled and that his records contained inaccuracies and misstatements that had caused him to be denied the FBI job. Defendants moved to dismiss and, on January 31, 1996, the Court dismissed some parts of the complaint but preserved the central Privacy Act claims against the agency itself. *See* note 1, *supra.*

In response to the Court's Opinion and Order of January 31, 1996, defendants filed a status report reiterating that the October 7, 1994 letter represented the agency's "final response" to plaintiff's Privacy Act request. *See* Defs.' Status Report (Feb. 20, 1996). At a status conference on February 28, 1996, plaintiff reasonably complained that he could not be sure that he had received all responsive documents, citing the fact that the response letters from the CIA dated June 21, August 26 and October 7 each represented that the agency's search was complete and that plaintiff should expect no further documents. *See* Defs.' Status Report (Mar. 20, 1996), Exs. B–H. Defendants' counsel assured the Court that renewed efforts would be made to produce all documents responsive to plaintiff's Privacy Act/FOIA request.

On March 20, 1996, defendants submitted a status report purporting to fully document the CIA's processing of plaintiff's request.

---

1. The Court previously dismissed all named defendants in their individual capacities, plaintiff's constitutional claims for damages, his APA claim and his common law tort claims. *See* Memorandum Opinion and Order of January 31, 1996. Plaintiff sought leave to amend his complaint and the Court granted the motion in part, permitting additional allegations of violations of the Privacy Act but denying plaintiff's efforts to reinject into this case claims against individual defendants and the constitutional damages and common law tort claims. *See* Order of May 7, 1996.

Attached to the status report was a three-volume exhibit containing several hundred pages of both newly and previously released documents, some heavily redacted, and a 17–page index identifying 238 documents. Plaintiff moved to amend his complaint on April 12, 1996, and the Court permitted some but not all amendments. *See* note 1, *supra.* Numerous motions and other papers were subsequently filed, including defendants' dispositive motion now before the Court. On November 29, 1996, in response to plaintiff's criticisms, defendants provided plaintiff with 250 pages of "reprocessed" records. *See* Pl.'s Response to and Analysis of Privacy Act Records Re–Processed By the Defendants (Jan. 21, 1997); *see also* Supplemental Declaration of Lee S. Strickland ("Suppl. Strickland Decl.") ¶¶ 15, 16 (Nov. 6, 1996), Defs.' Reply.

Throughout it all, plaintiff has maintained and continues to maintain that his records contain inaccuracies, that documents are missing, that information has been improperly redacted, that information was improperly disseminated, and generally that the CIA has failed to comply with the disclosure provisions and accuracy guarantees of the Privacy Act. As a result, he alleges that he was denied the FBI job and continues to be prejudiced in his ability to obtain employment. He also argues that discovery is necessary in order to determine the full extent of the CIA's noncompliance.

In his most recent filing, plaintiff provides a document-by-document critique of each of the 238 released documents. *See* Pl.'s Response to and Analysis of Privacy Act Records Re–Processed By the Defendants (Jan. 21, 1997). His objections to these documents fall into five categories: (1) some documents lack classification markings and/or declassification instructions; (2) redaction was improper because the cited exemption does not support it or because underlying information is not classified; (3) improper segregation; (4) the subject of the document did not request confidentiality; and (5) plaintiff is unable to locate the document because he cannot determine whether the Bates number matched the exhibit number.

Defendants, in turn, assert that plaintiff's records are accurate, that he has now received all the documents to which he is entitled, that his initial Privacy Act request has been fully responded to and that any further Privacy Act claims for amendment are barred either by the statute of limitations or by plaintiff's failure to exhaust his administrative remedies. Defendants also assert that plaintiff has failed to state any constitutional claims and that he is not entitled to damages.

## II. THE PRIVACY ACT AND THE FOIA

The Privacy Act, 5 U.S.C. § 552a, governs the maintenance and dissemination of official federal government records pertaining to individuals. The Act limits the disclosure of individual information in various ways and requires federal agencies to maintain accurate records. The Act also creates a mechanism by which individuals can access their own records and request amendments to them when the records contain inaccuracies. Finally, the Act provides for actual damages where the agency's failure to maintain record accuracy is found to be "intentional or willful." 5 U.S.C. § 552a(g)(4).

Even where a requester is not entitled to a document under the Privacy Act, he or she may still be entitled to it under the FOIA. *See* 5 U.S.C. § 552a(t)(2) ("No agency shall rely on any [Privacy Act] exemption to withhold from an individual any record which is otherwise accessible to such individual under the provisions of the [FOIA].") Document requests therefore must be analyzed under both Acts.

## III. DISCUSSION

### A. Completeness of the CIA's Search

Plaintiff asserted in his early filings, although not in his most recent ones, that he did not receive all the documents to which he is entitled. While plaintiff clearly was not given all responsive documents immediately or even in a timely fashion, the processing of his Privacy Act request now appears to be complete. On February 12, 1996, plaintiff filed a declaration describing 21 categories of

materials that he believed had yet to be released to him. *See* Declaration of Louis J. Blazy (Feb. 12, 1996), Attachment to Pl.'s Motion for Reconsideration and Clarification of the Court's Jan. 31, 1996 Order. Defendants' counsel assured the Court on the record on February 28, 1996, that he would personally review plaintiff's request. As a result, the CIA produced many of the missing documents identified by plaintiff and explained why others were not available. *See* Declaration of Steven A. Cash ("Cash Decl.") ¶¶ 6(a)–(u) (Mar. 20, 1996), Attachment to Defs.' Status Report (Mar. 20, 1996) (describing in detail how the CIA responded to each of plaintiff's criticisms). In addition, Lee Strickland, the Information and Privacy Coordinator for the CIA, explained that all five CIA directorates, encompassing all CIA components, were instructed to search for responsive records and only two, the Director of Central Intelligence and the Directorates of Administration located any responsive records. *See* Suppl. Strickland Decl. ¶ 11.

In view of these representations and plaintiff's failure to identify any gaps in the adequacy of the search since the March 20 Status Report was filed, the Court finds that the CIA now has conducted an adequate search of its records.

### B. *August 20, 1990 Cut–Off Date*

■ Plaintiff complains that the government inappropriately used August 20, 1990 as the cut-off date for its search. An agency's use of a cut-off date will be upheld only where it is reasonable. *See McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1102–1104 (D.C.Cir.), *vacated in part on other grounds*, 711 F.2d 1076 (D.C.Cir.1983). Plaintiff's Privacy Act request letter is dated August 13, 1990, and the agency's response letter, notifying plaintiff that his request would be undertaken, is dated August 20, 1990. *See* Suppl. Strickland Decl. ¶ 5. All the information sought by plaintiff pertains to events that pre-date August 20, 1990, namely, the FBI's failure to hire him and the security investigation. Plaintiff argues that he submitted a second Privacy Act request on January 25, 1993 and that that date there-

fore should constitute the cut-off date for any search. Plaintiff's January 25, 1993 letter, however, does not purport to be a new Privacy Act request but merely inquires about the substantial delay in processing his August 1990 request. Nor does plaintiff's January 25, 1993 letter request any information relating to events after August 20, 1990. *See* Pl.'s Ex. 11 to Pl.'s Reply and Opp. Accordingly, the agency's use of the August 20, 1990 cut-off date was reasonable under the circumstances.

### C. *Plaintiff's Amendment Claims*

The Privacy Act permits an individual to request the amendment of a record pertaining to him or her and requires the agency either to promptly correct such record or to explain its reasons for refusing to amend. *See* 5 U.S.C. § 552a(d)(2). If the agency refuses to make the requested amendment, the Act creates a procedure by which a requester may request agency review of that refusal; if the agency maintains its refusal, the requester may file a statement of disagreement that serves as an annotation to all future disclosures. *See* 5 U.S.C. §§ 552a(d)(3) and (4). Finally, the Act permits an individual to bring a civil action challenging an agency's refusal to amend. 5 U.S.C. § 552a(g)(1)(A).

In this case, plaintiff claims that his personnel records contain inaccuracies that the CIA has failed to amend. Defendants respond that plaintiff only requested amendment of one specific inaccuracy in his record, namely, the allegations of sexual harassment, and that this inaccuracy was amended in 1990. Defendants argue that any claim for failure to amend arising from these allegations therefore is time-barred and that any other claim for amendment pertaining to any other allegedly inaccurate information is barred because plaintiff has failed to exhaust his administrative remedies.

#### 1. *Statute of Limitations*

■ The Privacy Act provides:

An action to enforce any liability created under this section may be brought ... within two years from the date on which the cause of action arises, except that where an agency has materially and will-

fully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to [sic] establishment of the liability of the agency . . ., the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

5 U.S.C. § 552a(g)(5). The D.C. Circuit has interpreted this provision to mean that "in a normal Privacy Act claim, the cause of action does not arise and the statute of limitations does not begin to run until the plaintiff knows or should know of the alleged violation." *Tijerina v. Walters*, 821 F.2d 789, 798 (D.C.Cir.1987). Furthermore, in amendment cases, the two year period is measured from the denial of a request to amend. *See Englerius v.. Veterans Administration*, 837 F.2d 895, 897 (9th Cir.1988); *Bergman v. United States*, 751 F.2d 314, 316 (10th Cir. 1984) (relying on *Oppenheim v. Campbell*, 571 F.2d 660, 662 (D.C.Cir.1978) for the proposition that the action "accrues" when the right to resort to court is perfected).

■ In this case, the statute of limitations has not run with respect to the amendment of the sexual harassment allegations because plaintiff did not and could not have known of the violation, namely, the Agency's failure to amend his records, until July 8, 1992, when he discovered that the FBI never received the corrective letter. *See* Pl.'s Opp'n at 15. On December 11, 1992, he appealed to the CIA Inspector General to correct his CIA and FBI records and, when no further amendment was forthcoming, filed this suit on November 26, 1993. Accordingly, his action challenging the agency's amendment of his records with respect to the sexual harassment allegations is not time-barred.

■ Plaintiff's amendment claim with respect to records containing allegations of sexual harassment nevertheless is moot because the CIA has amended plaintiff's CIA file and represents that the letter has now been sent to the FBI. *See* Supplemental Declaration of Joseph B. Castillo ("Suppl. Castillo Decl.") ¶ 4 (Nov. 6, 1996) ("I will undertake to advise the FBI that Plaintiff's file should be amended."). Since there is no further injunctive relief that could issue with respect to those records, that claim must fail.

### 2. *Exhaustion of Administrative Remedies*

■ An individual seeking amendment of a record must follow the procedures laid out in subsections 552a(d)(2) and (d)(3) of the Privacy Act, namely, request amendment of the record and, if the request is denied, request review of the denial. The Act only authorizes suit after an agency "makes a determination under subsection (d)(3) . . . or fails to make such a review in conformity with that subsection." 5 U.S.C. § 552a(g)(1)(A). In other words, no suit will lie until subsection (d)(3) has been invoked and the explicit steps of the statute followed. *See Dickson v. Office of Personnel Management*, 828 F.2d 32, 40 (D.C.Cir.1987).

■ This case is complicated by the fact that plaintiff requested amendment of his records but failed to follow the Agency's established procedures for doing so. He made two properly constituted Privacy Act requests by letters dated June 23, 1989 and August 13, 1990, but these letters merely demanded access and made no mention of any request for amendment of records or for review of any denial of such a request. Rather, plaintiff's only express requests for amendment are contained in his complaints to the Inspector General.

In his first such grievance, he complained of "several statements made by a previous supervisor in ORD . . . [m]any of [which] were erroneous and slanderous (e.g., I made unwanted advances to several ORD secretaries; scheduled a TDY with a female CT in ORD for unprofessional purposes; I was unwelcome at several contractor facilities. . . .)." Memorandum from Louis Blazy to Inspector General at 2 (July 28, 1989), Pl.'s Ex. 3 to Pl.'s Reply and Opp. Plaintiff further wrote: "Many statements made by this supervisor are totally and categorically false. I ask that these negative statements be substantiated or removed from my records permanently." *Id.* On July 16, 1990, plaintiff received a letter from James P. Lynch, Director of Security, stating that the IG inspection "concluded that allegations made to an Office of Security investigator by one of your supervi-

sors that you had made sexual advances to several ORD female employees was [sic] unfounded." Letter from James Lynch to Louis Blazy (July 16, 1990), Pl.'s Ex. 5 to Pl.'s Reply and Opp. The letter stated that plaintiff's file would be amended and the FBI would receive a copy of the letter.

Plaintiff did not challenge this response by the agency as insufficient, nor did he treat it as a refusal to amend. Rather, over two years later, on December 11, 1992, he lodged a further complaint with the IG's Office. *See* Formal Complaint Memorandum from Louis Blazy to IG/Investigations (Dec. 11, 1992), Pl.'s Ex. 10. In this memorandum plaintiff complained that the IG's office was remiss in updating his security records and that his files continue to contain inaccuracies not limited to the sexual harassment allegations. *Id.*

Plaintiff's letters to the IG and his invocation of IG grievance procedures do not constitute Privacy Act requests for amendment or review under 5 U.S.C. §§ 552a(d)(3) and (d)(4). Specific CIA procedures are set forth at 32 C.F.R. pt.1901 and they require plaintiff to have sent a letter to the Privacy Act Coordinator, not to the IG. *See* 32 C.F.R. § 1901.21. Plaintiff's memorandum to the IG was not addressed to the Privacy Act Coordinator and nowhere mentions the Privacy Act. Plaintiff knew how to initiate Privacy Act and FOIA requests since he had already done so several times. Plaintiff was obliged to follow CIA procedures in order to initiate his amendment claims. *See* 5 U.S.C. §§ 552a(e) and (f); *Haase v. Sessions*, 893 F.2d 370, 373–75 (D.C.Cir.1990) (claimants must exhaust amendment claims via agency procedures). Since he failed to do so, plaintiff has not exhausted his administrative remedies with respect to any amendment claims referenced in his complaints to the IG.[2]

█ Plaintiff argues that he was unaware of the many inaccuracies in his file, and therefore could not seek amendment of them,

until the CIA released documents in response to this lawsuit. *See* Amended Complaint ¶ 45. The record suggests, however, that plaintiff was aware of most of the inaccuracies about which he complains as early as 1989 and certainly by 1992. *See* Complaint at 15; Ex. 3 to Pl.'s Reply and Opp. Furthermore, even if plaintiff learned about further alleged inaccuracies during litigation, he is not permitted to leapfrog the detailed exhaustion requirements of the Act and proceed immediately to Court. *See Dickson v. Office of Personnel Management*, 828 F.2d at 40–41. Because of his failure to exhaust, plaintiff is not entitled to injunctive relief in the form of amendment of his personnel records in this action.

### D. Plaintiff's Accuracy Claims

█ The Privacy Act requires every federal agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination [about the individual]." 5 U.S.C. § 552a(e)(5). A violation of these provisions can give rise to a civil action where, as a result of the inaccuracy, "a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C); *see Sellers v. Bureau of Prisons*, 959 F.2d 307, 310 (D.C.Cir.1992). The adverse determination need not be made by the agency that actually maintains the record so long as it flowed from the inaccurate record. *See Dickson v. Office of Personnel Management*, 828 F.2d at 37. Only where "the court determines that the agency acted in a manner which was intentional or willful," however, may damages be awarded. 5 U.S.C. § 552a(g)(4); *see Deters v. U.S. Parole Commission*, 85 F.3d 655, 660 (D.C.Cir.1996) (a willful intentional act is "an act without grounds for believing it to be lawful, or [an act done] by flagrantly disregarding others' rights under the [Privacy]

---

**2.** Defendants take an inconsistent legal position on this issue since they appear to concede that plaintiff effectively sought amendment of his records pertaining to sexual harassment allegations and that those inaccuracies were amended. Plaintiff's request for amendment in that instance, however, was contained only in his IG complaint and never in a properly addressed request to the Privacy Act Coordinator. Nevertheless, defendants' inconsistency does not nullify the exhaustion requirement of the statute.

Act," or "[a] violation ... so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful."); *Tijerina v. Walters,* 821 F.2d at 799 (defining "intentional or willful" standard as "somewhat greater than gross negligence" or a "flagrant disregard" for rights protected by Privacy Act).

Plaintiff asserts that there are numerous inaccuracies in his personnel file, including false allegations of sexual harassment, false summations of his polygraph reports, false admissions that he mishandled classified information, false statements about the state of plaintiff's marriage, false statements about plaintiff having contemplated suicide and false statements about his emotional stability and character. Plaintiff also alleges that the CIA suppressed positive information about him. Plaintiff has identified the following specific adverse determinations that allegedly flowed from these inaccuracies: the FBI failed to give him a job, he was removed "from a career enhancing program entitled DDS & T Career Development Course," and his promotability category was dropped from a "2" to a "3". Amended Complaint ¶ 46.[3]

"In the typical [Privacy Act] case, ... it is feasible, necessary, and proper, for the agency and, in turn, the district court to determine whether each filed item of information is accurate." *Sellers v. Bureau of Prisons,* 959 F.2d at 311. Where "the facts at issues [are] clearly provable," the district court must conduct a *de novo* review of the evidence to determine the accuracy of the records. *Id.* On the other hand, where the disputed information is in the nature of a subjective opinion or otherwise incapable of being verified, the district court need not make credibility determinations but rather should ensure that the agency acted fairly and, where appropriate, cause the individual's files to reflect the dispute. *See* 5 U.S.C. § 552a(g)(1)(C); *Sellers v. Bureau of Prisons,* 959 F.2d at 311; *Doe v. United States,* 821 F.2d 694, 699–701 (D.C.Cir.1987); *Webb v. Magaw,* 880 F.Supp. 20, 24–25 (D.D.C. 1995).

Particularly where the disputed information is part of an employment performance evaluation, "[a] court should be very hesitant to second-guess subjective evaluations and observations by an employee's supervisors where such matters are within the competence and experience of those supervisors." *Hewitt v. Grabicki,* 794 F.2d 1373, 1378 (9th Cir.1986). This does not mean, however, that the agency can "squirrel away, deliberately or out of bureaucratic habit, unsubstantiated rumors, McCarthyesque innuendo, unchecked reports of dubious informers or prying neighbors," even where such information makes its appearance as part of an employment evaluation process. *Doe v. United States,* 821 F.2d at 699.

### 1. *The Alleged Inaccuracies*

In this case, the inaccuracies alleged by plaintiff are either nonexistent, have been corrected or are unverifiable opinions of supervisors, other employees and/or informants. As discussed above, the sexual harassment allegations have been removed from plaintiff's CIA file and a corrective letter has been sent to the FBI. Accordingly there are no longer any inaccuracies to correct in this regard. Whether the fact that plaintiff's file once contained inaccuracies gives rise to a claim for damages is discussed below.

Plaintiff claims that his file contains inaccurate summations of his polygraph reports because these reports state that he admitted that he removed classified information. *See* Amended Complaint ¶¶ 61–62. The polygraph summaries reflect that plaintiff admitted that he removed certain documents although he denied that they were classified or that he removed them deliberately or frequently. *See* Defs.' Ex. 1 (*Vaughn* Index), Tabs 57, 135, 144; Declaration of Joseph B. Castillo ("Castillo Decl.") ¶¶ 15–16 (July 31, 1996). While plaintiff may dispute whether the documents at issue were in fact classified, that dispute does not render the summaries inaccurate since they ac-

---

**3.** Plaintiff complains of numerous other agency actions, such as misrepresentations, false accusations, harassment and concealment of informa-

tion, *see* Amended Complaint ¶ 46, but he alleges no other specific adverse employment determinations other than those listed above.

curately reflect the nature of plaintiff's statements.

■ Plaintiff also alleged in his initial complaint that his files contain false statements about the state of his marriage as well as his private life and conduct. *See* Complaint ¶¶ 6, 32. Insofar as plaintiff complains about allegations of sexual harassment, those allegations have been expunged from his file. Insofar as plaintiff complains that statements about his marriage are inaccurate, the only references to his marriage are contained in or flow from the IG's investigatory memorandum of April 20, 1990, which reports that "[t]he OS file indicates that Mr. Blazy's marriage was on and off for several years and that he was temporarily separated from his wife in 1986, but that they had since gone [sic] back together." Defs.' Ex 1, Tab 210 ¶ 15. Plaintiff does not appear to dispute the fact that he and his wife were separated or that they had marital difficulties. *See* Pl.'s Opp'n at 46–47. Accordingly, claims relating to this asserted inaccuracy claim must fail.

■ Plaintiff also alleges that his file contains false statements about him having contemplated suicide at one time. *See* Pl.'s Opp'n at 49. In a memorandum to the file during plaintiff's IG investigation, the memorandum author notes that the "suicide" issue ·came up during a polygraph question about plaintiff's mental stability. The memorandum states:

> Mr. Blazy felt it was very unfair to raise this matter again 17 years later. When Mr. Blazy was 18 he took a dose of six sleeping pills after he and his girlfriend terminated their relationship. Mr. Blazy then called her to tell her what he had done. He did this to gain her sympathy, not as a suicide attempt.

File Memorandum from IG Investigation at 5 (May 26, 1989), Pl.'s Ex. 46 to Pl.'s Reply and Opp. ¶ 5. Defendants argue that "agency physicians opined that this constituted a suicide attempt" and that this "opinion" is not susceptible to objective verification. Defs.' Motion at 26. Since the memorandum clear-

ly explains that Mr. Blazy did not feel that he was attempting to commit suicide at the time, the Court finds plaintiff's file to be accurate in this regard and that any medical opinions interpreting the incident may remain in the file along with the memorandum.

■ Finally, plaintiff complains that his file contains several derogatory personal statements, namely that he has a "paranoid streak," that the security clearance process had made him "bitter and [wanting to] seek revenge," and that he was a "snake in the grass." These statements were made by several interviewees during his security clearance process and are contained in a memorandum recording those interviews. *See* Defs.' Ex. 1 (*Vaughn* Index), Tab 107 at 2–5. The context of these interviews makes clear that the derogatory statements were merely opinions of the interviewees and therefore unverifiable, particularly since they were made in the context of a personnel evaluation. Maintaining them in his file therefore is not a violation of the Privacy Act. *See* *Hewitt v. Grabicki*, 794 F.2d at 1378; *Webb v. Magaw*, 880 F.Supp. at 24–25.[4]

## 2. Relationship to Adverse Determinations

■ Even if there were inaccuracies in plaintiff's file, he has not demonstrated that they were causally related to any "adverse determination." The central adverse determination of which he complains is the FBI's failure to hire him. According to the declarations of Gordon Zacrep, who served as Section Chief of the Systems Development Section of the FBI and was responsible for hiring decisions including the decision not to hire plaintiff, the FBI's decision not to hire plaintiff was based on the information contained in four interviews conducted by the FBI and not on any information in the CIA's files. Declaration of Gordon N. Zacrep ¶¶ 6–9 (July 25, 1996); Supplemental Declaration of Gordon N. Zacrep ¶¶ 9–10 (Nov. 5, 1996).

Plaintiff attacks Mr. Zacrep's first declaration as being speculative and not based on personal knowledge and has moved to hold Mr. Zacrep in contempt. Plaintiff's chal-

---

4. The allegations of sexual harassment contained in one of the interviews were investigated and expunged.

lenge, however, is merely a conclusory denial of the contents of Mr. Zacrep's declaration. Mr. Blazy points to no evidence that Mr. Zacrep's declaration was made in bad faith, that the decision was not made in the way that he describes, or that he lacked the authority to decide not to hire plaintiff. On a motion for summary judgment, plaintiff cannot rest on allegations and speculation but must point to actual evidence that brings Mr. Zacrep's account into dispute. He has not done so.[5]

 Even if plaintiff had demonstrated that inaccurate information had led to any of the adverse determinations of which he complains, he has not shown that the CIA acted willfully in maintaining inaccurate records and therefore he is not entitled to damages. The only demonstrably false statements, namely those about sexual harassment, were expunged after a lengthy IG investigation. The rest of the information about which Mr. Blazy complains amounts to derogatory assessments of his personality by people interviewed by the CIA. While the CIA is not entitled to collect and maintain unfounded gossip and innuendo, it is permitted to investigate its employees' backgrounds and characters. Plaintiff has pointed to no piece of evidence that would suggest intentionality or even recklessness on the CIA's part and he therefore is not entitled to a trial on these issues. *See* Rule 56(c), Fed.R.Civ.P.[6]

### E. Plaintiff's Access Claims

Plaintiff alleges that he has not received all the information to which he is entitled. As noted above, the agency's search now is complete. Of 238 responsive documents, 25 documents were withheld in full and 24 were released in full, while the remaining 190 were released but partially redacted. *See* Suppl. Strickland Decl. ¶ 23.[7] The Court finds that, with the exception of one group of 15 documents as to which the CIA's explanation lacks sufficient detail, defendants properly invoked exemptions under the Privacy Act and the FOIA in support of withholding the information it declined to disclose.

First, plaintiff complains that some documents lack classification markings and/or declassification instructions. In response to this complaint, defendants "reprocessed" plaintiff's Privacy Act request in order to make classification markings readable. *See* Suppl. Strickland Decl. ¶ 15. They are now readable and this complaint therefore is moot.

Second, plaintiff alleges that certain redactions were improper because the specific exemption or exemptions cited in support of the particular redaction do not in fact support the redaction or because underlying information is not classified. *See* Pl.'s Response to and Analysis of Privacy Act Records Re-Processed By the Defendants (Jan. 21, 1997). Defendants maintain that the following categories of information have been properly withheld pursuant to Exemptions (j)(1) and (k)(1) of the Privacy Act and Exemptions 1, 3, 5, 6 and 7(D) of the FOIA: intelligence sources, intelligence methods, names of CIA officers, names and locations of CIA facilities, privileged material from plaintiff's Employment Review Panel meetings, names of third person non–Agency personnel, and the names of employees and informants.

---

5. Plaintiff also complains that he was removed from a promotion program and that his performance evaluation was reduced. If any of his inaccuracy claims had survived, he might have established a factual dispute over whether the inaccuracies led to his demotions. *See* 5 U.S.C. § 552a(g)(1)(C). Even if he had, however, plaintiff has not demonstrated any issues of fact regarding willfulness or intentionality on the part of the CIA and therefore these claims would not give rise to damages.

6. The Court notes that many of plaintiff's accuracy claims would be barred by the statute of limitations in any event since he was aware of most of the inaccuracies as early as 1989. *See*

Pl.'s Ex. 3. For accuracy claims, the two year statute of limitations runs from the date on which plaintiff knew or should have known of the maintenance of inaccurate records. *See Tijerina v. Walters*, 821 F.2d at 798; *Diliberti v. United States*, 817 F.2d at 1259, 1263–64 (7th Cir.1987). Insofar as there are factual disputes over when he learned of other inaccuracies, those claims would not be resolvable on summary judgment.

7. Mr. Strickland's declaration states that 24 documents were withheld in full but the *Vaughn* Index attached to his declaration reflects that 25 documents were in fact withheld in full.

### 1. *The Privacy Act and FOIA Exemptions 1 and 3*

■ Under Exemption (j)(1) of the Privacy Act, the Director of the CIA has legitimately exempted from the access provisions of the Act those records pertaining to intelligence sources and methods. *See* 32 C.F.R. § 1901.61(d)(1). In addition, under Exemption (k)(1) of the Privacy Act, the Director has legitimately exempted records pertaining to classified intelligence sources and methods and other classified information. *See* 32 C.F.R. § 1901.71(a)(1). Since plaintiff would not be entitled to information withheld pursuant to these exemptions, he could only gain access to it under the FOIA.

■ Exemption 1 of the FOIA exempts from disclosure records that are

specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1); *see Salisbury v. United States*, 690 F.2d 966, 970 (D.C.Cir.1982); *Halperin v. Central Intelligence Agency*, 629 F.2d 144, 147–48 (D.C.Cir.1980). In other words, under Exemption 1, plaintiff is not entitled to records that have been properly classified. Moreover, in determining whether records are properly classified a court must give "substantial weight" to agency declarations and affidavits, so long as they "contain reasonable specificity detail," even while it conducts a *de novo* review of the decision to withhold. *Halperin v. Central Intelligence Agency*, 629 F.2d at 148; *see American Civil Liberties Union v. Department of Justice*, 548 F.Supp. 219, 221 (D.D.C.1982); *Iglesias v. Central Intelligence Agency*, 525 F.Supp. 547, 552 (D.D.C.1981).

Exemption 3 of the FOIA exempts from disclosure those records that are

specifically exempted from disclosure by stature ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes

particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). The National Security Act of 1947 charges the Director of the CIA with "protect[ing] intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403–3(c)(6). In furtherance of that responsibility, Section 6 of the Central Intelligence Agency Act of 1949 exempts the CIA from provisions of any law "which require[s] publication or disclosure of the organization, functions, names, official titles, salaries or numbers of personnel employed by the Agency." 50 U.S.C. § 403g. Therefore under Exemption 3 of the FOIA plaintiff is not entitled to such information or information that would lead to its disclosure. *See Central Intelligence Agency v. Sims*, 471 U.S. 159, 167, 105 S.Ct. 1881, 1886–87, 85 L.Ed.2d 173 (1985); *Minier v. Central Intelligence Agency*, 88 F.3d 796, 801–02 (9th Cir.1996); *Pfeiffer v. Central Intelligence Agency*, 721 F.Supp. 337, 341–42 (D.D.C.1989); *Iglesias v. Central Intelligence Agency*, 525 F.Supp. at 554.

■ Mr. Strickland's two declarations articulate with specificity the reasons why certain information was redacted pursuant to Privacy Act Exemptions (j)(1) and (k)(1) and FOIA Exemptions 1 and 3. *See* Strickland Decl. ¶¶ 6–35; Suppl. Strickland Decl. ¶¶ 18–20. He also explains that the proper procedures were invoked for classifying the information. *See* Strickland Decl. ¶ 15. With respect to whether the information was properly withheld under FOIA Exemptions 1 and 3, a review of Mr. Strickland's declarations demonstrates that the withheld information pertains to intelligence sources and methods and/or facts about the organization, its functions and personnel. For example, Mr. Strickland explains that plaintiff's polygraphs constitute intelligence methods and therefore cannot be released, although summaries have been provided. *See* 32 C.F.R. § 1901.61(a)(1) (exempting polygraph records from the Privacy Act access provisions); Strickland Decl. ¶ 6(c); Strickland Suppl. Decl. ¶ 25.[8] He also explains that

---

**8.** Plaintiff's assertion that his records are "administrative" and therefore not subject to withholding fails. As a CIA computer scientist who worked on projects involving *classified informa-*

what has been deleted includes intelligence sources or methods, polygraph information, names and identifying information with respect to confidential sources, employees' names, component names, building locations and organization data—precisely the kind of material exempt by FOIA Exemption 1 and Section 6 of the Central Intelligence Act. *See* Suppl. Strickland Decl. ¶¶ 23–28, 39–43; *Iglesias v. Central Intelligence Agency*, 525 F.Supp. at 551–54; *Agee v. Central Intelligence Agency*, 524 F.Supp. 1290, 1292–93 (D.D.C.1981).

### 2. *FOIA Exemptions 5, 6 and 7(D)*

The CIA also invokes FOIA Exemptions 5, 6 and 7(D) to withhold, respectively, certain privileged materials, the names of third parties who have a privacy interest in nondisclosure, and the names of CIA employees and informants.

 As Mr. Strickland explained, the agency withheld communications between the CIA's Office of the General Counsel and members of plaintiff's Employee Review Panel ("ERP") while the ERP was deciding whether or not to recommend retaining plaintiff. *See* Strickland Decl. ¶ 37; Suppl. Strickland Decl. ¶¶ 29–30. The minutes of the ERP meetings were redacted pursuant to the deliberative process privilege. Factual information that might otherwise have been segregable under this privilege was also withheld as attorney work product and under the attorney-client privilege because the ERP's consultation with its counsel was, according to Mr. Strickland, in anticipation of potential litigation that might arise out of a decision to terminate plaintiff. FOIA Exemption 5 and Privacy Act Exemption (d)(5) permit the agency to withhold information that qualifies as attorney work product or falls under the attorney-client or deliberative process privilege. *See* 5 U.S.C. § 552(b)(5) (protecting privileged materials); 5 U.S.C. § 552a(d)(5) (protecting information compiled in reasonable anticipation of a civil proceed-

ing); *Jordan v. United States Department of Justice*, 591 F.2d 753, 771–75 (D.C.Cir.1978).

Plaintiff objects that the ERP meeting and consultations with counsel were not in anticipation of litigation and that the requested records therefore must be released. These records, however, were generated by the predecisional deliberative processes of the ERP in determining whether or not to retain or terminate plaintiff and therefore are protected under FOIA Exemption 5. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980); *Jordan v. United States Department of Justice*, 591 F.2d at 773; Suppl. Strickland Decl. ¶¶ 29–30. In addition, the consultation with the Attorney Advisor from the General Counsel's Office throughout the process at the very least demonstrates that the ERP was concerned about potential litigation. Exemption 5 was properly invoked.

 The CIA also redacted the names of third party non-Agency personnel pursuant to FOIA Exemption 6, which protects from disclosure personnel, medical and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6); *see* Strickland Decl. ¶ 35. The disclosure of such information is subject to a balancing between the individual's interest in privacy and the public's right to know how the government functions. *See United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Since the names of non-Agency personnel mentioned in plaintiff's file do not shed light on the workings of the CIA, while those individuals have an interest in protecting the fact that their names appear in such files, on balance the redactions were appropriate and disclosure would constitute an unwarranted invasion of personal privacy.

tion plaintiff's file precisely contains information pertaining to the CIA's methods and personnel. *See* Suppl. Strickland Decl. ¶ 20. Plaintiff's contention that Mr. Strickland was obliged to consult with the "responsible components" in determining whether the disclosure of informa-

tion would jeopardize intelligence sources pursuant to 32 C.F.R. § 1901.61(c) is likewise unpersuasive. 32 C.F.R. § 1901.61(c) applies only where the Agency refuses to either confirm or deny the existence of a record, which is not the case here.

■ Plaintiff also complains with respect to approximately half the released documents that the interviewees or information sources for those documents did not expressly request confidentiality and therefore that the CIA is not entitled to withhold their names under Exemption 7(D) of the FOIA. *See* Pl.'s Response to and Analysis of Privacy Act Records Re–Processed By the Defendants (Table) (contesting documents in Defs.' Ex 1, Tab Nos. 107, 110, 113, 128–133, 136–142, 144, 145, 147–149, 152, 153, 167–172, 174–191, 193–197, 202, 204–210, 212–216, 220–223, 236).[9] To invoke Exemption 7(D), an agency must show either that a source provided information to the agency "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *United States Dep't of Justice v. Landano*, 508 U.S. 165, 172, 113 S.Ct. 2014, 2019, 124 L.Ed.2d 84 (1993); *see Engelking v. Drug Enforcement Administration*, 119 F.3d 980, 981 (D.C.Cir. 1997) ("in most instances, the government can point to circumstances supporting an inference of confidentiality.").

Defendants respond that the names of CIA employees who were not expressly promised confidentiality were withheld pursuant to Exemption (j)(1) and (k)(1) of the Privacy Act and Exemption 3 of the FOIA, not on the basis of FOIA Exemption 7(D). Suppl. Strickland Decl. ¶¶ 39–41. Since the CIA is entitled to withhold the names of its employees under Section 6 of the Central Intelligence Act of 1949, and the names of covert employees pursuant to Privacy Act Exemption (j)(1) and (k)(1) and FOIA Exemptions 1 and 3, this decision was proper. As discussed above, information pertaining to the CIA's methods of investigation and the names of confidential informants, covert operatives and other personnel are exempt under the Privacy Act, the FOIA and the Central Intelligence Act as personnel and/or intelligence sources. Plaintiff therefore is not entitled to these names.

**3. Documents Withheld in Full**

The CIA has also withheld 25 documents in full. Those documents are as follows: Defs.' Ex 1, Tab Nos. 150, 154–155, 159–166, 192, 198–201, 224, 226–233.

■ Ten documents—Tabs Nos. 154, 155 and 159–166—are all described in the *Vaughn* Index as "polygraph information." Since the CIA's regulations expressly exempt polygraph information from the access provisions of the Privacy Act, *see* 32 C.F.R. § 1901.61(a)(1), these ten documents were properly withheld.

■ The remaining 15 documents are described in the *Vaughn* Index merely as "Notes," "Memo," "Personal Index Page," "Evaluation," or "Interview Report." Mr. Strickland's first declaration provide no further information on the specific nature of these documents. His second declaration explains that

[o]f the 24 [sic] documents denied in full, five contain medical testing methods, interviews, reports and evaluations, see Exhibit 1, Tabs 150, 198–201, ten contain polygraph testing methods, interviews, reports and evaluations, *see* Exhibit 1, Tabs 154–155, 159–166, and nine contain Office of Inspector General information *see* Exhibit 1, Tabs 224 and 226–233.

Suppl. Strickland Decl. ¶ 25. Mr. Strickland's descriptions of the contents of these documents are insufficient to assure the Court that they were properly withheld in full pursuant to a specific FOIA exemption or Privacy Act provision—especially since the CIA redacted similar information from other documents and released the rest of the document to plaintiff. Accordingly, these fifteen documents shall be submitted for *in camera* inspection, along with a supplemental declaration or *Vaughn* index which may be filed under seal if necessary.

In sum, having reviewed plaintiff's complaints about the CIA's withholding deci-

---

**9.** Plaintiff does not appear to dispute the redaction of the names of employees who were expressly promised confidentiality. Insofar as plaintiff suggests that the names of such employees, while exempt from disclosure under the Privacy Act, do not qualify for exemption under the

FOIA, the Court notes that CIA background investigations qualify as exempt from disclosure as law enforcement records under Exemption 7(D) of the FOIA. *See Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1242–43 (D.C.Cir. 1996).

sions, *see* Pl.'s Response to and Analysis of Privacy Act Records Re–Processed By the Defendants (Table), the extent of the redactions, *see* Defs.'s Ex. 1, and the explanations provided by Mr. Strickland in his two declarations, the Court finds that all of the redactions and some of the full-document withholdings were properly made in accordance with the Privacy Act and/or the FOIA. It is clear from an examination of the released documents that most of the redactions are of single words or phrases and Mr. Strickland has explained with sufficient specificity that these redactions are limited to such items as employee names, project names, locations, organizational data, intelligence methods and other information that the CIA was entitled to withhold. *See* Strickland Decl. ¶ 24. Accordingly, the Court finds it necessary to review *in camera* only those 15 non-polygraph documents identified above that have been withheld in full. Otherwise, it upholds the CIA's decisions.[10]

### F. Plaintiff's Segregability Claim

■■■■ Plaintiff alleges that some information was withheld improperly because the FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt...." 5 U.S.C. § 552(b). In this case, 190 of the 238 responsive documents have been redacted in part. *See* Suppl. Strickland Decl. ¶ 23. Mr. Strickland's declarations explain in sufficient detail, however, why the deletions have been made and the CIA's justification for them. *See* Strickland Decl. ¶ 38; Strickland Suppl.Decl. ¶¶ 21–25. He states in part:

[I]t is readily apparent to any reader from an inspection of the format of standard forms and the context of unredacted information in memoranda that only short segments containing employee names, component names, building names and locations, room numbers, telephone numbers, organization data and confidential sources have

been redacted from the overwhelming number of these documents.

*Id.* ¶ 23. "[W]here a phrase or entire sentence has been redacted, the redacted information contains an intelligence source or method, ... privileged attorney-client communications, ... polygraph information, ... or a confidential source.... No further information is releasable because only exempt information has been redacted." *Id.,* ¶ 24. The Court concludes that the CIA has adequately demonstrated that the information withheld is not reasonably segregable and thus was properly withheld under the Privacy Act and the FOIA. *See Neufeld v. IRS,* 646 F.2d 661, 666 (D.C.Cir.1981); *American Civil Liberties Union v. Department of Justice,* 548 F.Supp. at 222; *Iglesias v. Central Intelligence Agency,* 525 F.Supp. at 553.

### G. Plaintiff's Disclosure Claims

■■■■■ Plaintiff asserts that records pertaining to him were improperly released to the FBI, to his supervisor and to the ERP, including to non-voting members. The Privacy Act restricts an agency's ability to release records pertaining to an individual without his or her consent, subject to certain exceptions. In this case, the CIA had the authority to provide information to the FBI while the FBI was investigating plaintiff's employment application as a "routine use." *See* 5 U.S.C. § 552a(b)(3); CIA General Routine Use No. 3 (permitting inter-agency disclosure of information "in connection with the firing or retention of an employee"); Castillo Decl. ¶ 8. The CIA also had the authority to disclose the status of plaintiff's security investigation to his supervisor because he had a "need for the record[s] in the performance of [his] duties." 5 U.S.C. § 552a(b)(1). Similarly, the members of the ERP, including nonvoting members, had a need for plaintiff's records in the performance of their duties, since they were responsible for assessing his employment performance and prospects. For these reasons, plaintiff's wrongful disclosure claims fail.

---

**10.** Plaintiff also claims that he cannot locate certain documents because he cannot match the Bates number to the exhibit number. The Court

had no problem identifying documents in the *Vaughn* Index.

*H. Plaintiff's Constitutional Claims*

■ Plaintiff claims that his constitutional rights were violated by the creation and maintenance of false information in his file. His constitutional claims are for injunctive and declaratory relief only. *See* Opinion of January 31, 1996. While the Privacy Act is not necessarily the exclusive remedy for such wrongs, *see Dickson v. Office of Personnel Management,* 828 F.2d at 41, it provides full procedural protections and substantive redress for claims such as plaintiff's. Insofar as his constitutional claims are in fact reiterations of his claims that the CIA violated the Privacy Act, those claims therefore must fail. *See Spagnola v. Mathis,* 859 F.2d 223, 228 (D.C.Cir.1988) (comprehensive statutory scheme provided by Privacy Act precludes *Bivens* remedies for constitutional claims).

■ Read most generously, the complaint might be construed to allege that plaintiff was retaliated against for having complained of his supervisor's behavior in violation of the First and Fifth Amendments. This claim is analogous to his Privacy Act claim that the agency acted willfully in maintaining inaccurate information; as discussed above, plaintiff has not borne his burden on this issue. Even if such a claim were not completely encompassed by the Privacy Act, however, it does not rise to the level of a redressable constitutional violation. Plaintiff does not allege, for example, that he was exercising his First Amendment rights when he reported that his supervisor was making sexual advances toward other employees. Accordingly, plaintiff's constitutional claims must be dismissed.

*I. Plaintiff's Motion to Strike or Seal and for Sanctions*

Having obtained three volumes of released documents through this litigation, plaintiff somewhat ironically complains that the government improperly filed these documents with the Court in violation of his privacy rights. He argues that the release of his medical information, school records and other personal information without his permission violates the Privacy Act as well as various of the Federal Rules of Evidence. Defendants respond that the Court expressly ordered them in open court and in plaintiff's presence to reprocess plaintiff's Privacy Act request, that the only way they could demonstrate compliance to the Court was by filing the responsive documents (except for withheld information), and that plaintiff has waived his Privacy Act rights by pursuing this litigation. Defendants do not object to sealing those documents, however, at plaintiff's request.

The Court will grant plaintiff's request, acquiesced in by defendants, to seal the three-volume response to plaintiff's Privacy Act request contained in defendants' Exhibit 1 to the *Vaughn* Index. The Court notes, however, that those documents disclosed to plaintiff under the Freedom of Information Act would likewise be available to "any person" under the FOIA, 5 U.S.C. § 552(a)(3), and the Court's sealing order in no way affects the CIA's obligations under that statute in the event it receives an FOIA request from another requester for the same information. Concededly, there may be different considerations under the Privacy Act.

## IV. FINAL MATTERS

This case has been rendered more onerous than necessary because both sides have taken so many procedural liberties. Plaintiff, for example, has persisted in submitting numerous extra motions and other filings not provided for by the Court's scheduling Order issued on March 4, 1996, despite the Court's explicit instruction that all issues should be resolved through the filing of and responses to dispositive motions. Plaintiff's *pro se* status does not relieve him of the obligation to follow the Court's clear orders.

Plaintiff's prolixity is somewhat understandable, albeit unauthorized, in the face of the government's inexplicable failure to produce all the relevant information in this case in a timely and efficient fashion. Plaintiff brought this action in order to correct what he perceives to be gaps and inaccuracies in his CIA personnel file and defendants' failure to respond properly to his Privacy Act request. The central issue in this case therefore is the availability and accuracy of CIA documents. Yet defendants appeared nearly

incapable of finishing the process of reviewing files, producing documents, verifying information and otherwise assuring plaintiff and the Court that the record was complete so that legal arguments could be made and a final decision reached. Not only was the initial 1994 response to plaintiff's FOIA/Privacy Act request incomplete but defendants found it necessary to "reprocess" plaintiff's request seven months after its most recent "final response."

The Court also notes that Mr. Strickland's first declaration, filed with defendants' motion and upon which defendants heavily rely, was factually vague. In response to plaintiff's opposition, defendants submitted a much more detailed declaration by Mr. Strickland that provided what should have been provided in the first instance, namely, a detailed account of the reasons why each document was withheld or redacted. Defendants' failure to respond in appropriate detail the first time imposed an unnecessary burden on the Court as well as on plaintiff.

In a related vein, the filings submitted by both parties have consistently exceeded the page limitations contained in the local rules. Local Rule 108(e) requires that memoranda in support of or in opposition to motions shall not exceed 45 pages and replies shall not exceed 25 pages, absent Court approval. Plaintiff's opposition to defendants' dispositive motion was an unacceptable 85 pages, not including a 24–page statement of material facts in dispute and a 36–page declaration. Defendants sought permission to file a 42–page reply brief, arguing with some merit that an exception to the Rule was necessary because of the length of plaintiff's opposition. Defendants, however, took the opportunity to file with their reply substantially revised supplemental declarations of Messrs. Strickland, Castillo and Zacrep, as well as several new documents that had not been previously produced. This new information occasioned plaintiff's 25–page surreply. While both sides are entitled to litigate vigorously and thoroughly, the parties have wasted each other's resources as well as the Court's and made resolution of this matter more difficult and time-consuming.

An Order consistent with this Opinion is entered this same day.

SO ORDERED.

### ORDER

This case is before the Court on defendants' Motion to Dismiss in Part and For Summary Judgment, plaintiff's motion for clarification and reconsideration of the Court's May 7, 1996 Order, plaintiff's motion to strike from the record and/or seal certain documents filed by defendants, defendants' motion to file a reply in excess of the page limitations, plaintiff's motion for further discovery and plaintiff's motion to hold Gordon Zacrep in contempt. Having carefully considered the parties' numerous filings and the entire record and history of this case, and for the reasons contained in the accompanying Opinion issued this same day, it is hereby

ORDERED that defendants' Motion to Dismiss in Part and For Summary Judgment is GRANTED in part and DENIED in part. The Court will inspect *in camera* those documents located at Defendants' Exhibit 1, Tab Nos. 150, 192, 198–201, 224 and 226–233. Defendants' motion is granted in all other respects; it is

FURTHER ORDERED that plaintiff's motion for clarification and reconsideration of the Court's May 7, 1996 Order is DENIED as moot; it is

FURTHER ORDERED that plaintiff's motion to strike from the record and/or seal certain documents filed by defendants is GRANTED in part and DENIED in part. Defendants' Exhibit 1, Tabs 1–238, and Defendants' Notice of Filing, dated March 27, 1996, which contains Tabs 203–219, shall be SEALED. The Clerk of the Court is directed to place those exhibits under seal. Plaintiff's motion to strike and for sanctions is DENIED; it is

FURTHER ORDERED that defendants' motion to file a reply in excess of the page limitations is GRANTED; it is

FURTHER ORDERED that plaintiff's motion for further discovery is DENIED; it is

FURTHER ORDERED that plaintiff's motion to hold Gordon Zacrep in contempt is DENIED; and it is

FURTHER ORDERED that defendants, within twenty (20) days from the date of this Order, shall provide the 15 documents listed above for *in camera* review with a supplemental *Vaughn* Index or declaration.

SO ORDERED.