Richard E. SNYDER, Plaintiff,

v.

CENTRAL INTELLIGENCE
AGENCY, Defendant.

No. CIV.A.98–2697(PLF).

United States District Court,
District of Columbia.

Nov. 14, 2002.

Mark Steven Zaid, Krieger and Zaid, Washington, DC, for Plaintiff.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for Defendant.

## OPINION

### PAUL L. FRIEDMAN, District Judge.

Plaintiff brings this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, seeking records pertaining to himself kept by the Central Intelligence Agency, where he was briefly employed from 1949 to 1950, as well as any records retained by the CIA with respect to his tenure with the Foreign Service from 1950 to 1970. The case is before the Court on defendant's motion for summary judgment and plaintiff's cross-motion for discovery and to compel additional searches. Upon consideration of the arguments of the parties, the Court grants defendant's motion for summary judgment in part and denies it in part and denies plaintiff's cross-motion for discovery and for additional searches.

## I. BACKGROUND

In 1949, while awaiting assignment from the Foreign Service, plaintiff alleges that he accepted an interim appointment as a trainee and case officer in the Clandestine Branch of the Central Intelligence Agency. *See* Complaint ¶ 5. Approximately one year later, he accepted a position as a Foreign Service Officer in the United States Department of State. During the course of his career, he worked in Germany, Japan and the former Soviet Union. *See id.* ¶ 6. In September 1959, while stationed in Moscow, Mr. Snyder interviewed Lee Harvey Oswald, who had come to the Embassy to surrender his passport and to renounce his American citizenship. *See id.* ¶ 7. Lee Harvey Oswald would later become one of the most notorious criminals in American history, in connection with the assassina-

tion of President John F. Kennedy on November 22, 1963.

Because of his chance encounter with Oswald, Mr. Snyder was called to testify before the President's Commission on the Assassination of President John F. Kennedy, also known as the Warren Commission, in June 1964, and later before the House Select Committee on Assassinations in June 1978. *See* Complaint ¶ 9. Plaintiff alleges that because of his contacts with Oswald, his CIA file was restricted and "red flagged." *See id.* ¶ 10.

On April 3, 1994, plaintiff submitted a request to the CIA for "all records concerning himself." Plaintiff's Cross–Motion for Discovery and to Compel Additional Searches ("Pl.'s Cross–Motion") at 4; *see also* Complaint ¶ 17. The CIA responded to plaintiff in a letter dated April 15, 1994, indicating that it had received his request and was in the initial stages of processing it. *See* Pl.'s Cross–Motion at 4; Complaint ¶ 18. Over the course of the next several years, the parties exchanged numerous letters regarding the status of plaintiff's request. *See* Pl.'s Cross–Motion at 4; Complaint ¶¶ 19–24. On November 4, 1998, after exhausting his administrative remedies, *see* Complaint ¶ 26, plaintiff filed the complaint in this matter, claiming that the CIA purposely withheld records responsive to his request in violation of the FOIA, the Privacy Act and the APA. *See* Pl.'s Cross–Motion at 5; Complaint ¶¶ 16–33. Approximately three months after plaintiff filed his complaint, defendant began providing plaintiff with documents responsive to his request in three incremental releases dated January 19, 1999, February 2, 1999 and February 16, 1999. *See* Pl.'s Cross–Motion at 5.

On March 26, 1999, defendant moved for summary judgment, contending that the search conducted was adequate and that it permissibly redacted or withheld in their entirety responsive documents falling with-

in certain of the exemptions enumerated in the FOIA and the Privacy Act. *See* Defendant's Motion for Summary Judgment ("Def.'s Motion"). Plaintiff opposed defendant's motion and filed a cross-motion for discovery and to compel additional searches.

## II. DISCUSSION

Defendant's motion for summary judgment and plaintiff's cross-motion for discovery and to compel additional searches raise three distinct issues. First, there are questions concerning the adequacy of the search of records conducted by the CIA. The second issue concerns whether the defendant properly invoked certain FOIA exemptions to justify the withholding or redaction of specific documents. The final issue, raised in plaintiff's cross-motion, concerns the procedures followed by the CIA when responding to his FOIA request and to FOIA requests generally, and whether those procedures violate the FOIA, the Privacy Act or the APA. Defendant contends that plaintiff's arguments are moot because it now has complied with plaintiff's request and has released responsive documents to him. Alternatively, defendant contends that the procedures it followed comply with the applicable statutory requirements.[1]

### A. Adequacy of the Search

■ Before it can obtain summary judgment in a FOIA case, an agency "must show, viewing the facts in the light most favorable to the requester, that … [it] 'has conducted a search reasonably calculated to uncover all relevant documents.'" *Steinberg v. United States Department of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994) (quoting *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984)). In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. *See Oglesby v. United States Department of the Army*, 920 F.2d 57, 68 (D.C.Cir. 1990); *Int'l Trade Overseas, Inc. v. Agency for Int'l Development*, 688 F.Supp. 33, 36 (D.D.C.1988). While there is no requirement that an agency search every record system, *Truitt v. Department of State*, 897 F.2d 540, 542 (D.D.C.1990), or that a search be perfect, *Meeropol v. Meese*, 790 F.2d 942, 955–56 (D.C.Cir. 1986), the search must be conducted in good faith using methods that are likely to produce the information requested if it exists. *See Campbell v. United States Department of Justice*, 164 F.3d 20, 27 (D.D.C.1998).

The Court may award summary judgment solely on the basis of information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad

---

1. Defendant argues that because it has produced records responsive to plaintiff's request, plaintiff's complaints about delays in obtaining responsive documents is moot. *See* Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Cross-Motion for Discovery and to Compel Additional Searches and in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Opp.") at 3–6. A case is not moot, however, unless "the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). In this matter, plaintiff has a cognizable interest in having this Court determine whether the CIA's search for records responsive to plaintiff's request was adequate under the FOIA and relevant case law. *See Looney v. Walters–Tucker*, 98 F.Supp.2d 1, 2–3 (D.D.C. 2000). The case therefore is not moot.

faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981); *see also Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Agency affidavits or declarations must be "relatively detailed and non-conclusory . . . ." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C.Cir.1991) (quoting *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C.Cir.1981)). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Services, Inc. v. SEC,* 926 F.2d at 1200. While the affidavits or declarations submitted by the agency need not "set forth with meticulous documentation the details of an epic search for the requested records," *Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982), they must "describe what records were searched, by whom, and through what processes," *Steinberg v. United States Department of Justice,* 23 F.3d at 552, and must show "that the search was reasonably calculated to uncover all relevant documents." *Weisberg v. United States Department of Justice,* 705 F.2d 1344, 1350–51 (D.C.Cir. 1983); *see Campbell v. United States Department of Justice,* 164 F.3d at 27.

Although plaintiff alleged in his complaint that the defendant failed to provide any responsive documents in accordance with his request, *see* Complaint ¶¶ 23–25, 30–33, defendant subsequently released numerous documents in three incremental responses, dated January 19, 1999, February 2, 1999 and February 16, 1999. *See* Pl.'s Cross–Motion at 5. Based on the papers filed by both parties, including the detailed declarations submitted by defendant, the Court concludes that the processing of plaintiff's FOIA and Privacy Act request now appears to be complete. In his cross-motion, however, plaintiff alleges that defendant's search of its records was inadequate. *See* Pl.'s Cross–Motion at 28–31. He contends that because he was the subject of intense scrutiny as a result of his contacts with Lee Harvey Oswald, it is highly likely that documents relating to him were scattered among several offices within the CIA. *See id.* at 29–30.

Plaintiff also enumerates 25 systems of records maintained by the CIA pursuant to the Privacy Act that defendant allegedly failed to search. *See* Pl.'s Cross–Motion at 30; Reply to Defendant's Opposition to Plaintiff's Cross–Motion for Discovery and to Compel Arbitration ("Pl.'s Reply") at 5. Plaintiff points to three specific documents that allegedly have been withheld but do not appear on the *Vaughn* index or in the explanation of the searches contained in the declarations of William H. McNair or Lee Strickland: (1) the February 3, 1978, "Outside Contact Report"; (2) a June 8, 1978, letter from G. Robert Blakely, HSCA Chief Counsel and Staff Director, to Scott Breckinridge, CIA, and; (3) a July 6, 1978, letter from Blakely to Breckinridge. *See* Pl.'s Cross–Motion at 31 & Ex. 5. Plaintiff argues that the fact that these documents were apparently not located during the defendant's search demonstrates the inadequacy of the search that was conducted.

William H. McNair represents in his declaration filed for the CIA that "[a]ll reasonable efforts were made to identify, retrieve, and process the records responsive to Plaintiff's FOIA/PA request." *See* Def.'s Motion, Ex., Declaration of William H. McNair ("McNair Decl.") ¶ 13. He notes that initially the Directorate of Administration ("DA") and the Directorate of Operations ("DO") were tasked, and later re-tasked on appeal, to respond to plaintiff's FOIA/PA request. *See id.*[2] The DA

---

**2.** When a division within an agency is "tasked," it is "asked to search for and identi-

and DO were then re-tasked again and the Historical Review Group ("HRG") was searched for the first time after plaintiff commenced litigation. *See id.* Mr. McNair contends that reasonable searches were conducted to respond to plaintiff's FOIA/PA request. *See id.* In addition, Lee Strickland, the Information and Privacy Coordinator for the CIA, explained that "[p]laintiff's was a complex request, ultimately requiring taskings to three of the five different Agency Directorates, each of which had to task the request to numerous components as well as participate in inter-Directorate coordination." Def.'s Opp., Ex., Supplemental Declaration of Lee S. Strickland ("Suppl. Strickland Decl.") ¶ 11.[3]

In view of the representations made in these declarations and plaintiff's failure to identify any substantial gaps in the adequacy of the search, the Court finds that the CIA has conducted an adequate search for responsive records. Although defendant did not search every conceivable area where responsive records might be found nor (it shall be assumed) was the search perfect, the FOIA does not impose either requirement on the agency. *See Meeropol v. Meese,* 790 F.2d at 955–56; *Truitt v. Department of State,* 897 F.2d. at 542. Defendant's declarations are sufficiently detailed to demonstrate that defendant conducted a reasonable and good-faith search for responsive records. *See Campbell v. United States Department of Justice,* 164 F.3d at 27. In fact, as a result of his FOIA request, plaintiff has received a large number of documents and, with respect to most of the redactions and withholdings, has few complaints. With re-

spect to the three documents identified by plaintiff that were not produced but are allegedly responsive, defendant shall either provide plaintiff with a copy of these documents or justify their withholding under the appropriate FOIA exemption.

### B. Documents Withheld Under FOIA Exemptions

#### 1. Exemptions 1 and 3

Under Exemption (j)(1) of the Privacy Act, the Director of the CIA can lawfully exempt records pertaining to intelligence sources and methods from the access provisions of the Act. *See* 5 U.S.C. § 552a(j)(1). Under Exemption (k)(1) of the Privacy Act, the Director also has the power to exempt records pertaining to classified information. *See* 5 U.S.C. § 552a(k)(1). The Director has exercised his authority with respect to both categories of records. *See* 32 C.F.R. §§ 1901.62(d)(1), 1901.63(a). Since plaintiff would not be entitled to information withheld pursuant to these exemptions to the Privacy Act, he could only gain access to it under the FOIA.

■ An agency may withhold documents responsive to a FOIA request only if the responsive documents fall within one of nine enumerated statutory exemptions. *See* 5 U.S.C. § 552(b). The agency bears the burden of justifying the withholding, and the court determines *de novo* whether the exemption claimed is appropriate. *See* § 552(a)(4)(B); *Department of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991). To enable the Court to determine whether documents are properly withheld, the agency must provide a

---

fy relevant records." *McGehee v. Central Intelligence Agency,* 697 F.2d 1095, 1098 (D.C.Cir.1983).

**3.** The CIA is composed of five directorates for FOIA purposes. Principally, the CIA is composed of the Directorates of Operations, Intelligence, Science and Technology and Administration. Additionally, the Office of the Director of Central Intelligence ("O/DCI") is considered a Directorate for FOIA purposes. *See* McNair Decl. ¶ 10.

detailed description of the information withheld through the submission of a so-called "Vaughn Index," sufficiently detailed affidavits or declarations, or both. *See Oglesby v. Department of Army,* 79 F.3d 1172, 1178 (D.C.Cir.1996); *Vaughn v. Rosen,* 484 F.2d at 827–28. Furthermore, the FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided ... after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Kimberlin v. Department of Justice,* 139 F.3d 944, 949 (D.C.Cir.1998) (quoting *Mead Data Central, Inc. v. Department of the Air Force,* 566 F.2d 242, 260 (D.C.Cir. 1977)). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978) (internal citation and quotation omitted).

Exemption 1 of the FOIA protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1); *see also* Exec. Order No. 12,958, § 1.5(c), 60 Fed.Reg. 19,825 (Apr. 17, 1995), *reprinted in* the Historical and Statutory Notes to 50 U.S.C. § 435 (West Supp.2002) (stating that information may not be classified unless it meets one of seven criteria, one of which concerns information regarding "intelligence sources or methods"); *Students Against Genocide v. Department of State,* 257 F.3d 828, 833, 840 (D.C.Cir.2001); *Salisbury v. United States,* 690 F.2d 966, 972 (D.C.Cir.1982). In sum, under Exemption 1, a plaintiff is not entitled to records that have been properly classified. While the Court determines *de novo* whether the records have been properly withheld, a court must give "substantial weight" to agency declarations and affidavits in determining whether records have been properly classified, so long as those declarations "contain reasonable specificity detail." *Halperin v. Central Intelligence Agency,* 629 F.2d 144, 148 (D.C.Cir.1980). *See American Civil Liberties Union v. Department of Justice,* 548 F.Supp. 219, 222 (D.D.C.1982); *Iglesias v. Central Intelligence Agency,* 525 F.Supp. 547, 552 (D.D.C.1981).

■ Exemption 3 of the FOIA exempts from disclosure those records that are "specifically exempted from disclosure by statute ..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). To support the withholding of documents under Exemption 3, defendant relies on two statutes. *See* Def.'s Motion at 9–10. First, defendant cites the National Security Act of 1947, which provides that the Director of the CIA shall "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403–3(c)(7) (West Supp.2002); *see also Miller v. Casey,* 730 F.2d 773, 777 (D.C.Cir.1984) (holding that this provision of the National Security Act supports Exemption 3). Second, defendant cites Section 6 of the Central Intelligence Agency Act of 1949, which exempts the CIA from provisions of any law "which require[s] publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [CIA]." 50 U.S.C. § 403g. The Court concludes that both these statutes qualify under Exemption 3 and that plaintiff therefore is precluded from receiving those records that fall under these

two statutes. *See Central Intelligence Agency v. Sims,* 471 U.S. 159, 167, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985); *Blazy v. Tenet,* 979 F.Supp. 10, 23 (D.D.C.1997); *Pfeiffer v. Central Intelligence Agency,* 721 F.Supp. 337, 341–42 (D.D.C.1989); *Iglesias v. Central Intelligence Agency,* 525 F.Supp. at 554.

The declarations of both Mr. McNair and Mr. Strickland articulate with specificity the process followed by the defendant in redacting certain information and withholding certain records and the reasons why certain information was either withheld from particular documents entirely or redacted pursuant to Exemptions (j)(1) and (k)(1) of the Privacy Act and FOIA Exemptions 1 and 3. *See* McNair Decl. ¶¶ 15–45; Def.'s Motion, Ex., Declaration of Lee S. Strickland ("Strickland Decl.") ¶¶ 12–19; Suppl. Strickland Decl. ¶¶ 18–19. Mr. McNair explains that the information contained in the records in question was properly designated under and processed in accordance with Executive Order 12,958 and that all reasonably segregable information has been released. *See* McNair Decl. ¶ 22. He also represents that the information withheld by defendant pertains directly to intelligence sources and methods and that disclosure of this information could be detrimental to an individual or to the CIA itself. *See id.* ¶¶ 31, 35–36. For example, Mr. McNair explains that disclosure of the withheld information could reveal the names and location of covert foreign CIA installations, *id.* ¶¶ 38–42, or divulge cryptonyms, which, in the aggregate, could be used to detect certain individuals or locations. *Id.* ¶¶ 43–44.[4]

At this point, plaintiff's only objection to documents withheld by defendant pursuant to Exemptions 1 and 3 concerns Document 18, the "Cherepanov Papers." *See* Pl.'s Cross–Motion at 26–28. Plaintiff argues that defendant failed to provide sufficient detail to justify the withholding of this document under Exemption 1, contending that defendant must "explain how this material falls within one or more of the categories of classified information authorized by the governing executive order" and "explain how disclosure of the material in question would cause the requisite degree of harm to the national security." Pl.'s Cross–Motion at 27, quoting *King v. United States Department of Justice,* 830 F.2d 210, 224 (D.C.Cir.1987).

The Court concludes, however, that the defendant has provided sufficient detail to explain why this document was withheld from plaintiff. As Mr. Strickland explains:

> The Cherepanov Papers are an analysis of the methods used by a foreign intelligence service to penetrate or exert pressure on U.S. diplomatic personnel. Although the foreign intelligence service described in the Cherepanov Papers is no longer active, we believe that its successor entity would utilize the same tactics and demonstrate the same habits. Accordingly, these classified facts are of current counter-intelligence interest and their disclosure could cause serious harm to the Agency's abilities to counteract such methods. Furthermore, the Cherepanov Papers review the personal habits and vulnerabilities of U.S. person embassy staff to evaluate the potential risks if those persons were approached by the foreign intelligence service. Obviously, such information is of a personal nature and is, for that reason, protected from disclosure. Because the subject matter of the Cherepanov Papers deals exclusively with the foreign intelligence service's practices and potential U.S. vulnerabilities to such practices no reasonably segregable portion of the docu-

---

4. A "cryptonym" is an artificial word used as a substitute for the actual name or identity of a person, organization, or project. McNair Decl. ¶ 43.

ment—other than the first seven pages—may be released.

Supp. Strickland Decl. ¶ 19; *see also* McNair Decl. ¶¶ 23–28, 30–37, 52(r). Despite the sensitivity of the Cherepanov Papers, the CIA turned over seven pages of this document to the plaintiff. *See* McNair Decl. ¶ 52(r). Based on Mr. Strickland's explanation and the relevant case law, the Court concludes that the agency has provided sufficient information to justify the withholding and has properly invoked Exemption 1.

The ultimate assessment of harm to intelligence sources and methods "is entrusted to the Director of Central Intelligence, not to the courts." *Students Against Genocide v. Department of State*, 257 F.3d at 835 (quoting *Fitzgibbon v. CIA,* 911 F.2d 755, 766 (D.C.Cir.1990)). In this case, the CIA has provided plaintiff with copies of about forty documents, most of which were released with only minor redactions. *See* McNair Decl. ¶ 52(a)-(nn). Plaintiff now contests only the redactions with respect to the Cherepanov Papers of which he has received only seven of the 68 pages. The Court concludes that defendant has adequately explained the basis for its redactions under Exemptions 1 and 3 of the FOIA and therefore grants defendant's motion for summary judgment on this issue.

### 2. Exemption 6

Exemption 6 of the FOIA permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see Billington v. United States Department of Justice,* 233 F.3d 581, 583 n. 2 (D.C.Cir.2000). Mr. McNair's declaration discloses that the CIA partially withheld only one document under Exemption 6. *See* McNair Decl. ¶ 52(d). From plaintiff's filing, it appears that he does not object to defendant's re-

daction of this document and concedes that the CIA has properly invoked Exemption 6. The Court therefore grants defendant's motion for summary judgment on this issue.

### C. Plaintiff's APA Claims: The Referral Process

■ Finally, plaintiff challenges under the APA: (1) the failure of the CIA to immediately release records that have been reviewed and processed for release by the CIA until those records also have been reviewed by third-party agencies; (2) the failure of the CIA to adequately monitor and oversee the progress of records or information transmitted to third-party agencies for review; and (3) the failure of the CIA to notify requesters of the referral of their request to a third-party agency, and, if permissible, identify the agency. *See* Complaint ¶¶ 28–33; Pl's Cross–Motion at 8.

Section 552(a)(4)(B) of the Administrative Procedures Act provides that the "district court . . . jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Under this section, federal jurisdiction is dependent upon a showing that an agency has (1) "improperly"; (2) "withheld"; (3) "agency records." *McGehee v. CIA,* 697 F.2d at 1105 (quoting *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980)). Furthermore, "[j]udicial authority to devise remedies and enjoin agencies can only be invoked, under the jurisdictional grant of [section] 552, if the agency has contravened all three components of this obligation." *Id.*

The Court finds that the CIA has not improperly withheld agency records under the *Kissinger* standard. Defendant has submitted declarations articulating with

specificity the procedures followed by the CIA when referring or coordinating document requests with third-party agencies. *See* Strickland Decl. & Suppl. Strickland Decl. Mr. Strickland explains in his declarations that the CIA routinely houses documents received from third party agencies but lacks the authority to unilaterally release the information. *See* Strickland Decl. ¶¶ 12–13. Thus, in accordance with the requirements of Executive Order No. 12,958, the CIA has adopted a policy of systematically directing requests to third party agencies by either "referring" the document to the other agency or "coordinating" with that agency about that document's release, in order to prevent the inadvertent release of information considered to be classified by another agency. *See id.* ¶¶ 14, 19; Suppl. Strickland Decl. ¶ 12.[5] In processing plaintiff's FOIA request, defendant determined that some documents needed "coordination" and were sent to third-party agencies for review. *See id.* ¶ 13. Mr. Strickland also notes that plaintiff's request was not actually forwarded to the third-party agency for processing until July 1998 (several years after the initial request but before litigation was commenced), apparently due to some sort of administrative error. *See id.*

In September 1998, Mr. Strickland notes, the CIA changed its procedures regarding "coordinations" with third-party agencies. *See* Suppl. Strickland Decl. ¶ 16. Under its policy change, the CIA "now closes cases and sends final response letters to requesters whenever all that remains is the coordination of records with other agencies." *Id.* The letter informs the requester that the CIA has forwarded

some records to another agency for review and if any additional records are discovered they will be provided. *See* Suppl. Strickland Decl. ¶ 16. As previously noted, plaintiff received three batches of documents beginning in early 1999 in response to his FOIA/Privacy Act request. *See* Pl.'s Cross–Motion at 5. As a result of the accelerated timing of these document releases, plaintiff directly benefitted from the CIA's policy change regarding "coordinated" documents. *See* Suppl. Strickland Decl. ¶ 16. Had the policy not been changed, plaintiff would not have received any documents from the CIA at least through June 1999, because at that time the "coordinations" had not been completed. *See id.* ¶ 13.

There is nothing in the record that shows that the defendant acted arbitrarily and capriciously in withholding records from plaintiff or generally from other individuals who make FOIA requests. In this case, plaintiff received his records (albeit somewhat belatedly) and received sufficient information to tell him what records and documents the CIA was withholding and for what reasons those records and documents were withheld. As defendant notes, plaintiff submitted a complex request that required three separate CIA Directorates to gather and ferret out relevant documents. *See* Suppl. Strickland Decl. ¶ 11. Thus, although it was a cumbersome process for all involved, plaintiff seems to have received the vast majority of responsive documents.

An Order consistent with this Opinion was issued on September 25, 2002.

SO ORDERED.

---

5. Mr. Strickland notes that the terms "referral" and "coordination" are terms of art. A "referral" occurs when the document request originated from a third-party agency and the CIA is asked to respond directly to the requester. A "coordination" occurs when the document originated from the CIA but contains information related to the third-party agency. According the Mr. Strickland, plaintiff's request was handled as a "coordination." Suppl. Strickland Decl. ¶ 12 & n. 1.

## ORDER

This matter is before the Court on defendant's motion for summary judgment and plaintiff's cross-motion for discovery and to compel additional searches. Upon consideration of the arguments presented by the parties, it is hereby

ORDERED that defendant's motion for summary judgment [4–1] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that plaintiff's cross-motion for discovery and to compel additional searches [7–1, 7–2] is DENIED; and it is

FURTHER ORDERED that on or before December 1, 2002, defendant shall either (1) provide a copy to plaintiff of each of the following documents, or (2) submit a supplemental declaration, which may be accompanied by a further memorandum of law if necessary, justifying the withholding of the following documents: (1) a February 3, 1978, "Outside Contact Report"; (2) a June 8, 1978, letter from G. Robert Blakely, HSCA Chief Counsel and Staff Director, to Scott Breckinridge, CIA; and (3) a July 6, 1978, letter from Blakely to Breckinridge. Upon the disclosure of said documents or upon a resolution by this Court of any continuing objection to disclosure, this will become a final appealable order. An Opinion outlining the reasons for the decision in this case will follow in due course.

SO ORDERED.